1  Jon B. Fougner (State Bar No. 314097)
   Email: Jon@FougnerLaw.com
2  600 California Street, 11th Fl.
   San Francisco, CA 94108
3  Telephone: (434) 623-2843
   Facsimile: (206) 338-0783
4

5  [Additional Counsel Appear on Signature Page]

6  *Attorneys for Plaintiff and the Proposed Classes*

7

8                  UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF CALIFORNIA
9                       OAKLAND DIVISION

10

11 SIDNEY NAIMAN, individually and on
   behalf of all others similarly situated,        NO.
12
                    Plaintiff,                      **COMPLAINT FOR DAMAGES AND
13                                                  INJUNCTIVE RELIEF**
         v.
14
   TRANZVIA LLC,                                    **DEMAND FOR JURY TRIAL**
15
                                                    **Class Action**
16                  Defendant.

17

18

19

20
          Plaintiff Sidney Naiman ("Plaintiff"), by his undersigned counsel, for this class action
21
   complaint against Tranzvia LLC and its present, former and future direct and indirect parent
22
   companies, subsidiaries, affiliates, agents, and/or other related entities ("Tranzvia" or
23
   "Defendant"), alleges as follows:
24

25

26

27

                              COMPLAINT - 1

# I. INTRODUCTION

1. <u>Nature of Action</u>. Plaintiff, individually and as class representative for all others similarly situated, brings this action against Tranzvia for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

# II. PARTIES

2. Plaintiff Sidney Naiman is an individual residing in California, in this District.

3. Defendant Tranzvia LLC is a Texas limited liability company with its principal place of business in Plano, Texas. Tranzvia does business in California and throughout the United States.

# III. JURISDICTION AND VENUE

4. <u>Jurisdiction</u>. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, specifically, 47 U.S.C. § 227.

5. <u>Personal Jurisdiction</u>. This Court has personal jurisdiction over Tranzvia because a substantial part of the wrongful acts alleged in this Complaint were committed in California.

6. <u>Venue</u>. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because Plaintiff resides in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

7. <u>Intradistrict Assignment</u>. Assignment to this Division is proper pursuant to Civil L.R. 3-2(c) because a substantial part of the events or omissions that give rise to Plaintiff's claims occurred in the County of Contra Costa.

# IV. THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

8. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

9. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone

number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to persons who receive calls in violation of Section 227(b)(1)(A). 47 U.S.C. § 227(b)(3).

10. According to findings of the Federal Communication Commission ("FCC"), the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

11. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

12. The FCC requires prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.  The FCC ruled:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service."

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 ¶ 33 (2012) (footnote omitted).

13. The FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 92-90, Memorandum and Order, 10 F.C.C. Rcd. 12391, 12397 ¶ 13 (1995).

14. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter*

*of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6574 (2013) ("May 2013 FCC Ruling").

### V. FACTUAL ALLEGATIONS

**A.   Factual Allegations Regarding Tranzvia**

15. Tranzvia offers various payment technologies for businesses. *About TranzVia*, TranzVia, http://www.tranzvia.com/about.cfm (last visited Aug. 14, 2017).

16. Tranzvia "is a registered ISO of Wells Fargo Bank, N.A," i.e., an Independent Selling Organization of Wells Fargo Bank. *Id.* (emphasis deleted).

17. One of Tranzvia's strategies for marketing its payment services included hiring Gordon Rose, an individual who operates a telemarketing company.

18. Mr. Rose's strategy for generating new customers involved the use of an automatic telephone dialing system ("ATDS") to solicit business.

19. Mr. Rose uses ATDS equipment that has the capacity to store or produce telephone numbers to be called, that includes autodialers and predictive dialers, and that plays a prerecorded message once the calls connect.

20. Recipients of these calls, including Plaintiff, did not consent to receive such telephone calls.

**B.   Factual Allegations Regarding Plaintiff**

21. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

22. Plaintiff's telephone number, (925) 935-XXXX, is registered to a cellular telephone service.

23. On June 8, 2017, Plaintiff's telephone number was called with a pre-recorded message by Mr. Rose's office.

24. The caller ID showed the telephone call was from (270) 594-7041.

25. When the call was answered, there was a lengthy pause and a click followed by silence before any voice came on the line, which indicated that the call was made using an ATDS.

26. Following the lengthy pause and extended silence, a prerecorded message played words to the effect that the call was being made to sell credit card processing services. The called party was instructed to press a button on his telephone for further information.

27. In an attempt to determine the identity of the caller, the recipient pressed the button for further information and was instructed by another prerecorded voice to leave a voice message with a telephone number.

28. Shortly after leaving his voice message, Plaintiff received a call from Brandon Arvizu, who claimed to be with Tranzvia and proceeded to try to sell Tranzvia products.

29. Mr. Arvizu called from the phone number (209) 257-6277.

30. After the phone call, Mr. Arvizu sent Plaintiff e-mails from a Tranzvia e-mail address attempting to sell Tranzvia products.

31. In June of 2017, Plaintiff received another pre-recorded message on his residential telephone line, (925) 735-XXXX.

32. When the call was answered, there was a lengthy pause and a click followed by silence before any voice came on the line, which indicated that the call was made using an ATDS.

33. Following the lengthy pause and extended silence, a prerecorded message played words to the effect that the call was being made to sell credit card processing services. The called party was instructed to press a button on his telephone for further information.

34. In an attempt to determine the identity of the caller, the recipient pressed the button for further information and was instructed by another prerecorded voice to leave a voice message with a telephone number.

35. Shortly after leaving his voice message, Plaintiff received a call from Jassan Sanford, who claimed to be with Tranzvia and proceeded to try to sell Tranzvia products.

36. Mr. Sanford called from the phone number (209) 257-6277.

37. After the phone call, Mr. Sanford sent Plaintiff e-mails from a Tranzvia e-mail address attempting to sell Tranzvia products.

38. Plaintiff has never been a customer of Tranzvia, nor has he ever been interested in being a customer of Tranzvia.

39. Plaintiff did not provide prior express written consent to receive ATDS-generated or prerecorded calls from, or on behalf of, Tranzvia.

40. Plaintiff's privacy has been violated by the above-described calls from, or on behalf of, Tranzvia. The calls were an annoying, harassing nuisance.

41. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Tranzvia because their privacy has been violated, they were subjected to annoying and harassing calls that constituted a nuisance, and they were charged for incoming calls. The calls also occupied their cellular telephone lines, rendering them unavailable for legitimate communication.

### VI. TRANZVIA'S ARRANGEMENT WITH MR. ROSE

42. Tranzvia is a "person," as defined by 47 U.S.C. § 153(39).

43. In its January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling*, CG Docket No. 02-278, FCC Docket No. 07-232, 23 F.C.C. Rcd. 559, 565 ¶ 10 (2008) ("Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call.").

44. On May 9, 2013, the FCC again confirmed this principle in a Declaratory Ruling holding that sellers such as Tranzvia may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 F.C.C. Rcd. at 6588 ¶ 37 (footnotes and alteration omitted) (second alteration in original).

45. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

46. The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n.107.

47. Tranzvia is legally responsible for ensuring that Mr. Rose complied with the TCPA, even if Tranzvia did not itself make the calls.

48. Tranzvia knowingly and actively accepted business that originated through the illegal telemarketing calls from Mr. Rose.

49. By hiring a company to make calls on its behalf, Tranzvia "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control," as described in the Restatement (Third) of Agency.

50. Similarly, by accepting these contracts, the company that Mr. Rose hired "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of Tranzvia. As such, Mr. Rose and the company are agents of Tranzvia.

51. Tranzvia had control over Mr. Rose's actions on its behalf. For example:

    a.    Tranzvia limited the types of businesses that Mr. Rose could solicit for Tranzvia.

    b.    Tranzvia restricted the geography within which Mr. Rose could promote Tranzvia.

    c.    Tranzvia decided whether, and under what circumstances, it would accept a customer from Mr. Rose.

    d.    Tranzvia instructed Mr. Rose with respect to the volume of calling and the number of leads it would purchase.

    e.    Tranzvia had day-to-day control over Mr. Rose's actions, including the ability to prohibit him from using an ATDS to contact potential customers of Tranzvia.

52. Nevertheless, Tranzvia failed to prohibit Mr. Rose from using an ATDS to contact potential customers of Tranzvia.

53. Mr. Rose transferred prospective customer information, including information about Plaintiff, directly to Tranzvia. Thus, the company that Tranzvia hired has the "ability . . . to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling. As such, the company that Tranzvia hired is an apparent agent of Tranzvia.

54. Tranzvia knew that Mr. Rose was violating the TCPA on its behalf and let him continue doing so.

55. Tranzvia received other complaints regarding the telemarketing Mr. Rose was engaging in, and the fact that it was violating the TCPA.

56. Other individuals have complained about receiving pre-recorded calls from the same phone number that called the Plaintiff:

> Telemarket Spam - VM Msg (1st few seconds cut off so purpose of call was lost)
> "...leave your name & # and...if you'd like to be removed from .."

*270-594-7041*, 800Notes, http://800notes.com/Phone.aspx/1-270-594-7041 (June 8, 2017) (omissions in original) (report of Charles).

> Merchant Services calling you with an important announcement you may have heard recently that credit and debit card processing fees for equipment rental companies and the rates cut substantially by the federal government through the Durbin Amendment of the Dodd Frank add we have found that many processors are not passing these cuts through to their merchants and instead keeping the discounts as profits for themselves getting these cuts now could add thousands of dollars per year back to YOUR BOTTOM LINE by lowering your bill every month if you would like to learn more about this rate cut program for equipment rental companies press 1 now to leave your name phone number and best contact time 1 of our agents will get back with you at your convenience if you would like to be removed from our list press 9.

*(270) 594-7041 is a Business Scam*, Nomorobo, https://www.nomorobo.com/lookup/270-594-7041 (June 8, 2017) (as in original).

57. In fact, Tranzvia was sued for TCPA violations relating to the conduct of Mr. Rose in *Cunningham v. Tranzvia, LLC*, No. 16-cv-00905-ALM (E.D. Tex. Nov. 26, 2016).

58. Tranzvia appeared in *Cunningham* over five months *before* the call to the Plaintiff in this matter, and yet Tranzvia continued to do business with Mr. Rose, and had him engage in pre-recorded telemarketing for them until August of 2017.

59. By engaging Mr. Rose to make calls on behalf of Tranzvia's agents to generate new business, and by accepting the benefits of the resulting sales of Tranzvia products, Tranzvia thereby ratified the use of unlawful calls as alleged in this case.

60. In any event, the May 2013 FCC Ruling states that called parties may obtain "evidence of [agency] relationships . . . through discovery, if they are not independently privy to

COMPLAINT - 9

such information." 28 F.C.C. Rcd. at 6592-93 ¶ 46. Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

## VII.   CLASS ACTION ALLEGATIONS

61. <u>Class Definitions</u>.  Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this case as a class action on behalf of national classes ("Classes") defined as follows:

<u>CELLULAR TELEPHONE CLASS</u>

> All persons to whom: (a) Tranzvia and/or a third party acting on Tranzvia's behalf made one or more non-emergency telephone calls; (b) promoting Tranzvia's goods or services; (c) to their cellular telephone numbers; (d) through the use of an automatic telephone dialing system or an artificial or prerecorded voice; (e) at any time in the period that begins four years before the date of filing this Complaint and ends at the date of trial.

<u>RESIDENTIAL TELEPHONE CLASS</u>

> All persons to whom: (a) Tranzvia and/or a third party acting on Tranzvia's behalf made one or more non-emergency telephone calls; (b) promoting Tranzvia's goods or services; (c) to their residential telephone numbers; (d) through the use of an artificial or prerecorded voice; (e) at any time in the period that begins four years before the date of filing this Complaint and ends at the date of trial.

Excluded from the Classes are Tranzvia, any entity in which Tranzvia has a controlling interest or that has a controlling interest in Tranzvia, and Tranzvia's legal representatives, assignees, and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

62. <u>Numerosity</u>.  The Classes are so numerous that joinder of all members is impracticable. On information and belief, the Classes have more than 100 members. Moreover, the disposition of the claims of the Classes in a single action will provide substantial benefits to all parties and the Court.

63. <u>Commonality</u>.  There are numerous questions of law and fact common to Plaintiff and members of the Classes.  These common questions of law and fact include, but are not limited to, the following:

    a.    Whether Tranzvia and/or its affiliates or agents, and/or other persons or entities acting on Tranzvia's behalf, violated 47 U.S.C. § 227(b)(1)(A) by making any call, except for emergency purposes, to a cellular telephone number using an ATDS and/or artificial or prerecorded voice;

    b.    Whether Tranzvia and/or its affiliates or agents, and/or other persons or entities acting on Tranzvia's behalf, knowingly and/or willfully violated 47 U.S.C. § 227(b)(1)(A) by making any call, except for emergency purposes, to a cellular telephone number using an ATDS and/or artificial or prerecorded voice, thus entitling Plaintiff and the Classes to treble damages;

    c.    Whether Tranzvia is liable for ATDS-generated and/or automated or prerecorded calls promoting Tranzvia's products or services made by Tranzvia's affiliates, agents, and/or other persons or entities acting on Tranzvia's behalf; and

    d.    Whether Tranzvia and/or its affiliates or agents, and/or other persons or entities acting on Tranzvia's behalf, violated 47 U.S.C. § 227(b)(1)(B) by making any call, except for emergency purposes, to a residential telephone number using an artificial or prerecorded voice; and

    e.    Whether Tranzvia and/or its affiliates, agents, and/or other persons or entities acting on Tranzvia's behalf should be enjoined from violating the TCPA in the future.

64. <u>Typicality</u>.  Plaintiff's claims are typical of the claims of the Classes.  Plaintiff's claims and those of the Classes arise out of the same course of conduct by Tranzvia and are based on the same legal and remedial theories.

65. <u>Adequacy</u>.  Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has retained competent and capable attorneys with significant experience in complex and class action litigation, including consumer class actions and TCPA class actions.  Plaintiff

1 and his counsel are committed to prosecuting this action vigorously on behalf of the Classes and
2 have the financial resources to do so.  Neither Plaintiff nor his counsel have interests contrary to
3 or conflicting with those of the proposed Classes.

4       66. <u>Predominance</u>.  Tranzvia has engaged in a common course of conduct toward
5 Plaintiff and members of the Classes.  The common issues arising from this conduct that affect
6 Plaintiff and members of the Classes predominate over any individual issues.  Adjudication of
7 these common issues in a single action has important and desirable advantages, including judicial
8 economy.

9       67. <u>Superiority</u>.  A class action is the superior method for the fair and efficient
10 adjudication of this controversy.  Classwide relief is essential to compel Tranzvia to comply with
11 the TCPA.  The interest of individual members of the Classes in individually controlling the
12 prosecution of separate claims against Tranzvia is small because the damages in an individual
13 TCPA action are dwarfed by the costs of bringing it.  Management of this action is likely to
14 present significantly fewer difficulties than are presented in many class actions because the calls
15 at issue are all automated and because the TCPA articulates bright-line standards for liability and
16 damages.  Class treatment is superior to multiple individual suits or piecemeal litigation because
17 it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a
18 forum for small claimants, and deters illegal activities.  There will be no significant difficulty in
19 the management of this case as a class action.

20       68. <u>Injunctive and Declaratory Relief is Appropriate</u>.  Tranzvia has acted on grounds
21 generally applicable to the Classes, thereby making final injunctive relief and corresponding
22 declaratory relief with respect to the Classes appropriate on a Classwide basis.

### VIII.   FIRST CLAIM FOR RELIEF
(Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A))

25       69. Plaintiff realleges and incorporates by reference each and every allegation set forth in
26 the preceding paragraphs.

27

70. The foregoing acts and omissions of Tranzvia and/or its affiliates or agents, and/or other persons or entities acting on Tranzvia's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency calls to the cellular telephone numbers of Plaintiff and members of the Cellular Telephone Class using an ATDS and/or artificial or prerecorded voice.

71. As a result of violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by Tranzvia and/or its affiliates or agents and/or other persons or entities acting on its behalf, Plaintiff and members of the Cellular Telephone Class are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

72. Plaintiff and members of the Cellular Telephone Class are also entitled to and do seek injunctive relief prohibiting Tranzvia, its affiliates and agents, and/or any other persons or entities acting on its behalf from violating the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice.

## IX.    SECOND CLAIM FOR RELIEF
**(Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A))**

73. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

74. As a result of knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by Tranzvia, its affiliates or agents, and/or other persons or entities acting on its behalf, Plaintiff and members of the Cellular Telephone Class are entitled to treble damages of up to $1,500 for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

## X.   THIRD CLAIM FOR RELIEF
**(Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(B))**

75. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

76. The foregoing acts and omissions of Tranzvia, its affiliates or agents, and/or other persons or entities acting on Tranzvia's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(B), by making non-emergency calls to the residential telephone numbers of Plaintiff and members of the Residential Telephone Class using an artificial or prerecorded voice.

77. As a result of violations of the TCPA, 47 U.S.C. § 227(b)(1)(B), by Tranzvia, its affiliates or agents, and/or other persons or entities acting on its behalf, Plaintiff and members of the Residential Telephone Class are entitled to an award of $500 in damages for each and every call made to their residential telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

78. Plaintiff and members of the Residential Telephone Class are also entitled to and do seek injunctive relief prohibiting Tranzvia, its affiliates and agents, and/or any other persons or entities acting on its behalf from violating the TCPA, 47 U.S.C. § 227(b)(1)(B), by making calls, except for emergency purposes, to any residential telephone numbers using an artificial or prerecorded voice.

## XI.   FOURTH CLAIM FOR RELIEF
**(Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(B))**

79. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

80. As a result of knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by Tranzvia, its affiliates or agents, and/or other persons or entities acting on its behalf, Plaintiff and members of the Residential Telephone Class are entitled to treble damages

of up to $1,500 for each and every call made to their residential telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

## XII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of all members of the Classes, prays for judgment against Tranzvia as follows:

    A.    Certification of the proposed Classes;

    B.    Appointment of Plaintiff as representative of the Classes;

    C.    Appointment of the undersigned counsel as counsel for the Classes;

    D.    A declaration that actions complained of herein by Tranzvia and/or its affiliates, agents, or related entities violate the TCPA;

    E.    An order enjoining Tranzvia and its affiliates, agents and related entities from engaging in the unlawful conduct set forth herein;

    F.    An award to Plaintiff and the Classes of damages, as allowed by law;

    G.    An award to Plaintiff and the Classes of attorneys' fees and costs, as allowed by law and/or equity;

    H.    Leave to amend this Complaint to conform to the evidence presented at trial; and

    I.    Orders granting such other and further relief as the Court deems necessary, just, and proper.

## XIII.   DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

## XIV.   SIGNATURE ATTESTATION

The ECF user filing this Complaint attests that concurrence in its filing has been obtained from each of the other signatories.

RESPECTFULLY SUBMITTED AND DATED this 17th day of August, 2017.

By: */s/ Jon B. Fougner*

Jon B. Fougner

Edward A. Broderick
Email: ted@broderick-law.com
Anthony I. Paronich
Email: anthony@broderick-law.com
BRODERICK & PARONICH, P.C.
99 High Street, Suite 304
Boston, Massachusetts 02110
Telephone: (617) 738-7080
Facsimile: (617) 830-0327
*Subject to Pro Hac Vice*

Matthew P. McCue
E-mail: mmccue@massattorneys.net
THE LAW OFFICE OF MATTHEW P. McCUE
1 South Avenue, Suite 3
Natick, Massachusetts 01760
Telephone: (508) 655-1415
Facsimile: (508) 319-3077
*Subject to Pro Hac Vice*