Jon B. Fougner (State Bar No. 314097)
Email: Jon@FougnerLaw.com
600 California Street, 11th Fl.
San Francisco, CA 94108
Telephone: (434) 623-2843
Facsimile: (206) 338-0783

Anthony I. Paronich, *Admitted Pro Hac Vice*
Email: anthony@broderick-law.com
BRODERICK & PARONICH, P.C.
99 High Street, Suite 304
Boston, Massachusetts 02110
Telephone:  (508) 221-1510
Facsimile:   (617) 830-0327

*Attorneys for Plaintiff and the Proposed Classes*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIDNEY NAIMAN, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>1.       v.<br><br>TRANZVIA LLC<br><br>                    Defendant. | Case No. 17-cv-04813-PJH<br><br>**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S RULE 12 MOTION TO DISMISS**<br><br>JURY TRIAL DEMAND<br><br>Complaint Filed:  August 18, 2017<br><br>DATE: November 29, 2017<br>TIME: 9:00 a.m.<br><br>LOCATION:  Courtroom 3 |

## <u>TABLE OF CONTENTS</u>

I.   STATEMENT OF ISSUES TO BE DECIDED .................................................................. 1

II.  STATEMENT OF RELEVANT FACTS ......................................................................... 2

III. ARGUMENT AND AUTHORITIES................................................................................. 4

    A.   The Complaint Sufficiently Alleges Bases for Tranzvia's Vicarious Liability for Mr.
Rose's Telemarketing: Ratification, Actual Authority and Apparent Authority. ...................... 4

        1.   At Least *Five Months* Prior to the Violations in This Case, Tranzvia Knew That Mr.
Rose Was Accused of Similar Violations on Tranzvia's Behalf, but Tranzvia Continued to
Hire Mr. Rose for Such Telemarketing—Thereby Ratifying It. ............................................. 5

        2.   Mr. Rose Had Actual Authority Because Tranzvia Controlled Details of His Work and
Entered into a Contract with Him Anticipating Telemarketing Complaints, Lawsuits and
Government Inquiries. ............................................................................................................. 7

        3.   Tranzvia Donned Mr. Rose with Apparent Authority by Granting Him Access to Its
CRM System, Which Would Normally Be Within Its Exclusive Control ........................... 11

    B.   This Court Has Specific Personal Jurisdiction over Tranzvia.......................................... 12

        1.   Tranzvia Purposefully Directed Its Activities Toward California. ............................... 14

        2.   Plaintiff's Claims Against Tranzvia Relate to Activities in California. ........................ 16

        3.   Requiring Tranzvia to Defend in California Is Not Unreasonable. ............................... 16

IV. CONCLUSION ............................................................................................................... 20

V.  SIGNATURE ATTESTATION........................................................................................ 20

## **TABLE OF AUTHORITIES**

**Cases**

*Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781 (N.D. Cal. 2015)............................................ 4

*Am. Auto. Ass'n, Inc. v. Darba Enters., Inc.*, No. C 09-00510 SI, 2009 U.S. Dist. LEXIS 37564
(N.D. Cal. Apr. 21, 2009) ............................................................................ 19, 20, 21

*Aranda v. Caribbean Cruise Line, Inc.,* 179 F. Supp. 3d 817 (N.D. Ill. 2016) ............................ 7

*Baker v. Caribbean Cruise Line, Inc.*, No. CV 13-8246-PCT-PGR, 2014 WL 880634 (D. Ariz.
Mar. 6, 2014) ............................................................................................................ 16, 18

*Bancroft & Masters v. Augusta Nat'l*, 223 F.3d 1082 (9th Cir. 2000) ........................................ 17

*Branham v. ISI Alarms, Inc.*, No. 12-CV-1012 (ARR) (MDG), 2013 U.S. Dist. LEXIS 124933
(E.D.N.Y. Aug. 30, 2013)................................................................................................ 18

*Brodsky v. HumanaDental Ins. Co.*, No. 10 C 3233, 2014 U.S. Dist. LEXIS 80790 (N.D. Ill. June
12, 2014) ........................................................................................................................ 9

*Calder v. Jones*, 465 U.S. 783 (1984)........................................................................................ 15

*Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126 (9th Cir. 1995).......................................... 13

*Creative Montessori Learning Ctr. v. Ashford Gear, LLC*, No. 09 C 3963, 2014 U.S. Dist.
LEXIS 27758 (N.D. Ill. Mar. 3, 2014) ........................................................................ 9

*Cunningham v. Tranzvia, LLC*, No. 16-cv-00905-ALM (filed E.D. Tex. Nov. 26, 2016)............ 6

*Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001) .................................................................... 18

*Freidman v. Massage Envy Franchising, LLC*, No. 3:12-cv-02962-L-RBB, 2013 U.S. Dist.
LEXIS 84250 (S.D. Cal. June 13, 2013)....................................................................... 11

*Glencore Grain Rotterdam B.V. v. Shuvnath Rai Harnarain Co.*, 284 F.3d 1114 (9th Cir. 2002)
........................................................................................................................................ 14

*Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014), *aff'd*, 136 S. Ct. 663, 674 (2016),
*as amended* (Feb. 9, 2016)............................................................................................ 20

*Gordon v. DTE Energy*, 680 F. Supp. 2d 1282 (W.D. Wash. 2010) ...................................... 17, 19

*Hudak v. Berkley Grp., Inc.*, No. 3:13-cv-00089-WWE, 2014 WL 354676 (D. Conn. Jan. 23, 2014) ........................................................................................................................... 16, 18

*Imhoff Inv., LLC v. SamMichaels, Inc.*, 2014 U.S. Dist. LEXIS 4965 (E.D. Mich. Jan. 15, 2014) 9

*j2 Global Commc'ns, Inc. v. Blue Jay, Inc.*, No. C 08-4254 PJH, 2009 WL 29905 (N.D. Cal. Jan. 5, 2009) ............................................................................................................................ 17, 22

*Keim v. ADF Midatlantic, LLC*, No. 12-80577-CIV-MARRA, 2015 U.S. Dist. LEXIS 159070 (S.D. Fla. Nov. 9, 2015) ...................................................................................................... 6

*Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292 (D. Nev. 2014) ................................... 8

*Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370 (S.D. Fla. 2014) ......................................... 9

*Luna v. Shac, LLC,* No. C14-00607 HRL, 2014 WL 3421514 (N.D. Cal. July 14, 2014) ..... 16, 18

*McCabe v. Caribbean Cruise Line, Inc.*, No. 13-CV-6131, 2014 U.S. Dist. LEXIS 91116 (E.D.N.Y. July 3, 2014) ...................................................................................................... 9

*MH Pillars Ltd. v. Realini*, No. 15-cv-1383-PJH, 2017 U.S. Dist. LEXIS 33450 (N.D. Cal. Mar. 8, 2017) ............................................................................................................................... 3

*Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012) .................................................................. 2

*Myers v. Bennett Law Offices*, 238 F.3d 1068 (9th Cir. 2001) ..................................................... 13

*Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 U.S. Dist. LEXIS 77294 (N.D. Cal. June 15, 2015) .............................................................................................................. 11

*Phan v. Grand Bahama Cruise Line, LLC*, No. 15-cv-05019-BLF, 2016 U.S. Dist. LEXIS 49219 (N.D. Cal. Apr. 11, 2016) ............................................................................................... 14, 15

*Roylance v. ALG Real Estate Servs.*, No. 5:14-cv-02445-PSG, 2015 U.S. Dist. LEXIS 44930 (N.D. Cal. Mar. 16, 2015) .................................................................................................. 12

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) ................................. 15

*Wash. Dep't of Revenue v. www.dirtcheapcig.com, Inc.*, 260 F. Supp. 2d 1048 (W.D. Wash. 2003) ................................................................................................................................... 15

*Tech Heads, Inc. v. Desktop Serv. Ctr., Inc.*, 105 F. Supp. 2d 1142 (D. Or. 2000) ............... 17, 20

*Yahoo! Inc. v. La Lique Contre Le Racisme*, 433 F.3d 1199 (9th Cir. 2006) .............................. 15

**Statutes**

47 U.S.C. § 227 (2012) ...................................................................................................... 1

47 U.S.C. § 227(b)(1)(A)(iii) (2012) ................................................................................. 2

47 U.S.C. § 227(b)(3) (2012) ............................................................................................ 2

**Other Authorities**

Restatement (Third) of Agency § 2.01 (2006) .................................................................. 7

Restatement (Third) of Agency § 4.01 (2006) .................................................................. 5

Restatement (Third) of Agency § 4.07 (2006) .................................................................. 5

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 4, 8

Fed. R. Civ. P. 12(b)(2) .................................................................................................. 12

**Regulations**

*In re DISH Network, LLC*, 28 FCC Rcd. 6574 (2013) ................................................. 5, 8, 10, 12

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391 (1995) ............................................................................................ 4

## I.   STATEMENT OF ISSUES TO BE DECIDED

Plaintiff Sidney Naiman ("Plaintiff") has brought a putative class claim pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 (2012) ("TCPA"), which prohibits automated or prerecorded telephone calls to cellular telephones and recognizes them as an invasion of privacy. Defendant Tranzvia LLC ("Defendant" or "Tranzvia") has filed a motion to dismiss (the "Motion") for two reasons. Dkt. No. 24. Neither reason is persuasive.

Tranzvia's first asserted reason for dismissal is that it is not liable for its telemarketer, Gordon Rose, who operates Arris Holdings LLC ("Arris"). As controlling law from the Federal Communications Commission ("FCC") and the Ninth Circuit makes clear, this theory is wrong for three reasons, each independently sufficient for denying Defendant's Motion. *First*, Tranzvia ratified the conduct of Mr. Rose by continuing to accept the new customers that his illegal telemarketing brought in for over *five months* after it had defended a lawsuit alleging identical TCPA violations by Mr. Rose. *Second*, Tranzvia gave Mr. Rose actual authority to engage in the conduct that is the subject of the Complaint by authorizing him to send the telemarketing calls at issue despite anticipating do-not-call requests, complaints, lawsuits and government inquiries as a result. *Third*, by granting Mr. Rose access to its proprietary system to upload potential customer information, which allowed Tranzvia to follow up directly with potential customers such as Plaintiff, Tranzvia donned Mr. Rose with apparent authority to act on Tranzvia's behalf. As shown below, facts substantiating each of these three bases for vicarious liability are alleged in the Complaint.

Tranzvia's second asserted reason for dismissal is that it is not subject to personal jurisdiction in California. This theory must fail for similar reasons that Tranzvia's agency theory fails. Tranzvia granted Mr. Rose authority to direct pre-recorded telemarketing into California,

1

and nothing in the declaration or contract attached to its Motion suggests otherwise. Tranzvia intentionally directed its conduct into California for an obvious reason: to generate sales here. The Court's exercise of jurisdiction over such conduct is consistent with traditional notions of fair play and substantial justice. What would be unfair would be to require Plaintiff, whose only interactions with the Defendant were the result of unlawful telemarketing targeting him in California, to file his claim in Texas. Defendant purposefully availed itself of the protections of the laws of the State of California by attempting to consummate a transaction with Plaintiff in California and could reasonably expect to be haled into court here.

For all of these reasons, and those that follow, Defendant's Motion should be denied.

## II.   STATEMENT OF RELEVANT FACTS

In 1991, Congress enacted the TCPA to protect consumers from intrusive and unwanted calls.  Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 372 (2012).  The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii) (2012).  The TCPA provides a private cause of action to persons who receive calls in violation of Section 227(b)(1)(A).  Id. § 227(b)(3).

Plaintiff is a resident of this District. Dkt. No. 1 ¶ 2. Tranzvia offers payment technologies for businesses.  Id. ¶ 15.  Tranzvia "is a registered ISO of Wells Fargo Bank, N.A," i.e., an Independent Selling Organization of Wells Fargo Bank.  Id. ¶ 16.  One of Tranzvia's strategies for marketing its services involved hiring Mr. Rose, an individual who operates a

telemarketing company. *Id.* ¶ 17.[2]

Plaintiff was a target of Tranzvia's scheme. Twice in June of 2017, Plaintiff received a pre-recorded telemarketing call from Mr. Rose on behalf of Tranzvia. *Id.* ¶¶ 23, 31.[3] Each call began with a lengthy pause and a click followed by silence before any voice came on the line, which indicated to Plaintiff that the call was made using an automatic telephone dialing system ("ATDS"). *Id.* ¶¶ 25, 32. Then a prerecorded message played on each call advertising credit card processing services. *Id.* ¶¶ 26, 33. In an attempt to determine the identity of the caller, Plaintiff pressed the button for further information and was instructed by another prerecorded voice to leave a voice message with a telephone number. *Id.* ¶¶ 27, 34. In response to each message Plaintiff left after each prerecorded call, Plaintiff received a return call from a Tranzvia employee attempting to sell its products. *Id.* ¶¶ 28, 35.

Plaintiff has never been a customer of Tranzvia, nor has he ever been interested in being a customer of Tranzvia. *Id.* ¶ 38. Plaintiff did not provide prior express written consent to receive ATDS-generated or prerecorded calls from, or on behalf of, Tranzvia. *Id.* ¶ 39. Others have complained about receiving pre-recorded calls from the same phone number that called the

---

[2] Tranzvia's Motion attaches a telemarketing contract between it and Arris, which Mr. Rose controls and operates. For consistency with his Complaint, the Plaintiff will continue to refer to Tranzvia's telemarketer as "Mr. Rose."

[3] In a footnote, *see* Dkt. No. 24 at 4 n.2, Tranzvia quibbles that Plaintiff's Complaint does not allege that the second call was identical to the first and therefore does not allege that the second call was placed by Mr. Rose. This argument is both wrong and irrelevant. It is wrong because the parallels between the two calls adequately show that both calls were part of a scheme. *Compare* Dkt. No. 1 ¶¶ 23-30 (robocall selling credit card processing services followed by call and email from Tranzvia), *with id.* ¶¶ 31-37 (same). In any event, at this stage, Plaintiff is entitled to all reasonable inferences from his pleading, *MH Pillars Ltd. v. Realini*, No. 15-cv-1383-PJH, 2017 U.S. Dist. LEXIS 33450, at *9 (N.D. Cal. Mar. 8, 2017). The Complaint plainly states that "Tranvia's strategies for marketing its services involved the hiring of Mr. Gordon Rose, an individual who operates a telemarketing company." Dkt. No. 1 ¶ 17.

Plaintiff.  *Id.* ¶¶ 56, 61.

### III.   ARGUMENT AND AUTHORITIES

"'The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint.'  Generally, a plaintiff's burden at the pleading stage is relatively light." *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 793 (N.D. Cal. 2015) (internal citation omitted) (*quoting N. Star Int'l v. Ariz. Corps. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983)). "In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes 'all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party' .... A plaintiff need not plead a prima facie case in order to survive a motion to dismiss pursuant to Rule 12(b)(6)." *Id.* at 793 (alteration in original) (quoting *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)).

### B.   The Complaint Sufficiently Alleges Bases for Tranzvia's Vicarious Liability for Mr. Rose's Telemarketing: Ratification, Actual Authority and Apparent Authority.

FCC rulemaking and Ninth Circuit precedent establish that Mr. Naiman has sufficiently alleged Tranzvia's vicarious liability for the TCPA violations described in the Complaint. According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, the TCPA also "generally establishes that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995). The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6574 (2013) ("2013 FCC

Ruling").

Thus, Tranzvia admits "that a party may be held vicariously liable for violations of the TCPA that are committed by third-parties under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." Dkt. No. 24 at 5 (quotation marks omitted).  But Tranzvia's Motion does not even try to tackle one of the Complaint's most powerful allegations of vicarious liability: Tranzvia's continued, knowing enjoyment of the fruits of Mr. Rose's willful violations. For that reason alone, the Motion must be denied. Additionally, because the Complaint adequately alleges factual bases for actual and apparent authority, dismissal is unwarranted.

> 1. At Least *Five Months* Prior to the Violations in This Case, Tranzvia Knew That Mr. Rose Was Accused of Similar Violations on Tranzvia's Behalf, but Tranzvia Continued to Hire Mr. Rose for Such Telemarketing—Thereby Ratifying It.

The fundamental principle of ratification is that one may not accept the benefits of a transaction without also bearing its legal consequences.  Restatement (Third) of Agency § 4.07 cmt. b (2006).  "The sole requirement for ratification is a manifestation of assent or other conduct indicative of consent by the principal. To be effective as a ratification, the principal's assent need not be communicated to the agent or to third parties whose legal relations will be affected by the ratification."  *Id.* § 4.01 cmt. b.  "[W]hen a person ratifies another's act, the legal consequence is that the person's legal relations are affected as they would have been had the actor been an agent acting with actual authority at the time of the act."  *Keim v. ADF Midatlantic, LLC,* No. 12-80577-CIV-MARRA, 2015 U.S. Dist. LEXIS 159070, at *27 (S.D. Fla. Nov. 9, 2015) (Seller's acceptance of benefits of telemarketer's TCPA violations constitutes ratification, precluding dismissal.).

The FCC has made clear that ratification applies to the TCPA. 2013 FCC Ruling ¶ 34 ("[A] seller may be liable for the [telemarketing] of another under traditional agency principles if it ratifies those acts by knowingly accepting their benefits."). Defendant's Motion does not deny that the Complaint adequately alleges all elements of a ratification theory of liability:

- illegal telemarketing by Mr. Rose (or Arris) on Defendant's behalf;

- Defendant's benefit from that telemarketing; and

- Defendant's knowledge of its illegality.

Conspicuously absent from Tranzvia's Motion is *any mention* of the allegation that Tranzvia appeared in a TCPA suit regarding Mr. Rose's telemarketing on its behalf, *Cunningham v. Tranzvia, LLC*, No. 16-cv-00905-ALM (filed E.D. Tex. Nov. 26, 2016), *five months* before the violations at issue here. Dkt. No. 1 ¶¶ 57-58. Thus, for its own economic benefit, Tranzvia continued to hire Mr. Rose for the same illegal conduct for at least five months after learning of the alleged illegality.

"Ratification [of TCPA violations] occurs when an agent acts for a principal's benefit and the principal does not repudiate the agent's actions." *Aranda v. Caribbean Cruise Line, Inc.,* 179 F. Supp. 3d 817, 831 (N.D. Ill. 2016). Ratification may occur even though the agent's acts were unauthorized by the principal. *Id.* at 833. The *Aranda* court granted the plaintiffs' motion for partial summary judgment when the plaintiffs showed that the "defendants became aware of the possibility that some or all of the calls being made were unlawful under the TCPA and that each of them continued to accept business flowing from the campaign" while a lawsuit "might be imminent." *Id.* Here, the argument for ratification is stronger still: a TCPA lawsuit was not merely in the offing when the principal continued to accept business flowing from the campaign;

it had already been filed, seven months before, and Tranvia had appeared in that lawsuit five months prior to the call to Mr. Naiman here.

> 2.   Mr. Rose Had Actual Authority Because Tranzvia Controlled Details of His Work and Entered into a Contract with Him Anticipating Telemarketing Complaints, Lawsuits and Government Inquiries.

As a second, independently sufficient basis for vicarious liability, Tranzvia granted Mr. Rose actual authority to make the pre-recorded telemarketing calls at issue here, because it controlled specifics of the calls, knew of their illegal nature and paid for them to continue. In any event, courts consistently hold that actual authority is a fact-intensive inquiry ill-suited to resolution before discovery.

"An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) of Agency § 2.01 (2006).  Actual authority can be implied, through words or conduct.  *Id.* § 2.01 cmt. b.  At a minimum, through its conduct—continuing to pay Mr. Rose for leads after their allegedly illegal origins had been brought to its attention via *Cunningham*—Tranzvia impliedly conveyed to him that it wished him to keep calm and carry on. *See* Dkt. No. 1 ¶¶ 17-19, 23, 54. And lest there be any doubt that the telemarketing in question was conducted for Tranzvia (as opposed to some other buyer of credit card processing leads), the contract attached to Defendant's Motion makes clear that Tranzvia is the *exclusive* beneficiary of such marketing. Dkt No. 24-2 Ex. A ¶¶ 10, 17.

That contract also explains why Tranzvia was unfazed by *Cunningham*. ***All along, the parties had anticipated do-not-call requests, complaints, lawsuits and government inquiries directed at Tranzvia as a result of Arris's telemarketing.*** Dkt. No. 24-2 Ex. A ¶¶ 2, 12.

Unsubtly, the very next paragraph of the contract asserts that Arris is not Defendant's agent, and the very paragraph after that purports to require Arris to follow FCC regulations. *Id.* ¶¶ 13-14. Even if this wink-wink, see-no-evil defense might have carried the day before *Cunningham*, that case undisputedly put Defendant on notice. The jig was up—or should have been.

In any event, courts consistently recognize that assessing vicarious liability for TCPA violations is a fact-intensive inquiry inappropriate for resolution under Rule 56, let alone Rule 12(b)(6). *E.g.*, *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1302 (D. Nev. 2014) (denying motion to dismiss TCPA claims when plaintiff had sufficiently plead "a plausible agency relationship based on actual authority (arising through contractual relationships)").[4] The 2013 FCC Ruling held that called parties may obtain "evidence of these kinds of relationships … through discovery, if they are not independently privy to such information." 2013 FCC Ruling ¶ 46.

Tranzvia impliedly concedes that if it had the right to control Mr. Rose, it is liable for his violations. Dkt. No. 24 at 9-10. Recognizing that its Motion is therefore doomed, Tranzvia incorrectly asserts that Plaintiff "has not stated a single fact demonstrating that Tranzvia actually had control over Rose." *Id.* at 9. A person reading page 4 of the Motion would conclude that

---

[4] *See also Brodsky v. HumanaDental Ins. Co.*, No. 10 C 3233, 2014 U.S. Dist. LEXIS 80790 (N.D. Ill. June 12, 2014) (denying defendant's motion for summary judgment as to vicarious liability claim for violations of the TCPA's "junk fax" provisions); *McCabe v. Caribbean Cruise Line, Inc.,* No. 13-CV-6131, 2014 U.S. Dist. LEXIS 91116 (E.D.N.Y. July 3, 2014) (denying motion to dismiss TCPA vicarious liability claims); *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1377 (S.D. Fla. 2014) ("[S]ummary judgment on vicarious liability is appropriate only in cases where evidence of the relationship is clear and unequivocal."); Creative Montessori Learning Ctr. v. Ashford Gear, LLC, No. 09 C 3963, 2014 U.S. Dist. LEXIS 27758 (N.D. Ill. Mar. 3, 2014); *Imhoff Inv., LLC v. SamMichaels, Inc.*, 2014 U.S. Dist. LEXIS 4965, at *19 (E.D. Mich. Jan. 15, 2014) (denying plaintiff's motion because the "issue of agency turns on the control exercised" by the alleged principal, "which cannot be determined as a matter of law").

paragraph 51 of the Complaint was simply a conclusory statement that Tranzvia had control over

Mr. Rose's action on its behalf. *Id.* at 4 (citing Dkt. No. 1 ¶ 51). That conclusion would not be

correct. Paragraph 51 of the Complaint alleges:

> 51. Tranzvia had control over Mr. Rose's actions on its behalf. For example:
>
> a. Tranzvia limited the types of businesses that Mr. Rose could solicit for Tranzvia.
> b. Tranzvia restricted the geography within which Mr. Rose could promote Tranzvia.
> c. Tranzvia decided whether, and under what circumstances, it would accept a customer from Mr. Rose.
> d. Tranzvia instructed Mr. Rose with respect to the volume of calling and the number of leads it would purchase.
> e. Tranzvia had day-to-day control over Mr. Rose's actions, including the ability to prohibit him from using an ATDS to contact potential customers of Tranzvia.

Dkt. No. 1 ¶ 51. Tranzvia's wishing away all these specific allegations of control is all the bolder

in light of the contract attached to its Motion, which confirms at least one of them. Dkt. No. 24-2

Ex. A ¶ 1 (instructing Mr. Rose with respect to the volume of calling and the number of leads

Tranzvia would purchase).

Moreover, as everyday experience reminds us, a written contract is but one element of the

control that a principal exercises over its agent.  The declaration attached to Defendant's Motion

does not contend otherwise.  And the contract attached to it reminds us of this commonsense

reality.  For instance, the contract is dated November 2016, but it specifies vacation dates in

2012 to 2014 only.  Dkt. No. 24-2 Ex. A at Preamble, ¶ 9.  Clearly, the parties deviated from the

four corners of the contract.  And so it is no surprise that Tranzvia never cites any authority for

its proposition that "Naiman's claims against TranzVia are necessarily determined by the terms

of the November 8, 2016 Marketing Agency Agreement."  Dkt. No. 24 at 1-2.  Indeed, as the

FCC has held, "the presence of contractual terms purporting to forbid a third-party marketing entity from engaging in unlawful telemarketing activities would not, by themselves, absolve the seller of vicarious liability."  2013 FCC Ruling ¶ 34 n.102.

The cases cited by Tranzvia are not to the contrary. For instance, the Motion relies heavily on *Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 U.S. Dist. LEXIS 77294, at *1 (N.D. Cal. June 15, 2015).  Dkt. No. 24 at 5, 6, 7.  The *Panacci* court found the allegation of vicarious liability in that case insufficient because "the Complaint has virtually no allegations regarding the relationship between A1 Solar and NREC."  *Id.* at *22.  Here, on the other hand, the Complaint is rife with details about the relationship, Dkt. No 1 ¶¶ 17, 28-30, 35-37, 48, 51-55, 57-58—***and Tranzvia has admitted that a long-term relationship existed*** between it and Mr. Rose's company by attaching a five-page, bespoke contract between the two parties to its Motion.

Tranzvia's reliance on *Freidman v. Massage Envy Franchising, LLC*, No. 3:12-cv-02962-L-RBB, 2013 U.S. Dist. LEXIS 84250 (S.D. Cal. June 13, 2013) is similarly misplaced.  In *Freidman*, the vicarious liability allegations were held insufficient because they were merely formulaic recitations of conclusory language.  *Id.* at **8-12.  A review of the plaintiffs' complaint in that case reveals why.  *See* Complaint ¶¶ 10, 13- 14, 26-27, *Freidman v. Massage Envy Franchising, LLC*, No. 3:12-cv-02962-L-RBB, 2013 U.S. Dist. LEXIS 84250 (S.D. Cal. June 13, 2013), ECF No. 1.  That pleading bears little resemblance to Mr. Naiman's detailed agency allegations. *E.g.*, Dkt. No. 1 ¶ 51 (alleging that Tranzvia controlled the types of businesses targeted by Mr. Rose, the geographic scope of the promotion, its acceptance of customers from Mr. Rose, the call volume and number of leads, and day-to-day mechanical details).

Tranzvia's other cases fare no better.  Consider *Roylance v. ALG Real Estate Servs.*, No. 5:14-cv-02445-PSG, 2015 U.S. Dist. LEXIS 44930 (N.D. Cal. Mar. 16, 2015), cited twice in Defendant's Motion.  Dkt. No. 24 at 4 n.2, 7. *Roylance* was a *grant* in part of a plaintiff's motion for a default judgment.  Procedurally, therefore, it offers no support to Defendant's motion to dismiss.  Substantively, its facts are not on point with the case at bar, but if anyone, it is Mr. Naiman whose position it supports.  Like the vicariously liable TCPA defendant in *Roylance*, Tranzvia followed up on its telemarketer's robocall by sending marketing materials concerning the same product.  *Compare Roylance*, 2015 U.S. Dist. LEXIS 44930, at 13-15 (robocall advertising low-interest mortgage followed by written marketing materials advertising low-interest mortgage), *with* Dkt. No. 1 ¶¶ 15, 23-37 (robocalls advertising financial services followed by written marketing materials advertising financial services).

In short, the Complaint pleads plausible facts showing control and actual authority, and Tranzvia offers no case showing that those allegations are insufficient.

### 3.    Tranzvia Donned Mr. Rose with Apparent Authority by Granting Him Access to Its CRM System, Which Would Normally Be Within Its Exclusive Control

As a third, independently sufficient basis for vicarious liability, Tranzvia allowed Mr. Rose access to its customer relationship management ("CRM") system in order to transfer prospective customer information, including information about Plaintiff, directly to Tranzvia. Dkt. No. 1 ¶ 53. The contract attached to Defendant's Motion confirms this allegation. Dkt. No. 24-2 Ex. A ¶ 1 ("Opt-In Sales Leads will be uploaded into TranzVia's C.R.M. by Arris employees."). The 2013 FCC Order envisioned this precise scenario when holding that a seller like Tranzvia conveyed apparent authority by allowing "the outside sales entity access to information and systems that normally would be within the seller's exclusive control." 2013 FCC Order ¶ 46 ("The ability by the outside sales entity to enter consumer information into the

seller's sales or customer systems ... may also be relevant."). Granting third-party access to such information is persuasive enough that the FCC further held that such access "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.*.

Moreover, Tranzvia's continuing to engage Mr. Rose after appearing in *Cunningham*, Dkt. No. 1 ¶¶ 57-59, bestowed upon him apparent authority to violate the TCPA on Tranzvia's behalf.  2013 FCC Order ¶ 46. ("[A] seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.")

### C.      This Court Has Specific Personal Jurisdiction over Tranzvia.

While the party seeking to invoke jurisdiction of the federal court has the ultimate burden of establishing that such jurisdiction exists, at this stage of the litigation, the plaintiff need only make a *prima facie* showing of the jurisdictional facts.  *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1071 (9th Cir. 2001). In ruling on a Rule 12(b)(2) motion, the court should view the pleadings in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor. *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 n.1 (9th Cir. 1995).

The sole case Tranzvia cites to argue that this Court lacks personal jurisdiction over it is no help to Defendant.  *See* Dkt. No. 24 at 11 (*citing Phan v. Grand Bahama Cruise Line, LLC*, No. 15-cv-05019-BLF, 2016 U.S. Dist. LEXIS 49219 (N.D. Cal. Apr. 11, 2016)).  What Tranzvia intends *Phan* to show is a mystery.  Tranzvia cites the case to support its assertion that "even assuming that TranzVia could be held vicariously liable for Rose's acts (which it cannot

for all of the reasons stated above), Naiman has not put forth any factual allegations showing that the Court has personal jurisdiction over Rose." But as Tranzvia's own quotation of that case make clear, that case stands for no such proposition. To the contrary, the heart of *Phan*'s analysis is the sentence immediately following the one quoted by Tranzvia: "For example, Plaintiffs have alleged neither that the [putative principals] directed [the putative agent]'s telemarketing activity nor that they benefited from that alleged activity." *Phan v. Grand Bahama Cruise Line, LLC*, No. 15-cv-05019-BLF, 2016 U.S. Dist. LEXIS 49219, at *5 (N.D. Cal. Apr. 11, 2016). Thus, *Phan* did not hold that vicarious liability cannot give rise to personal jurisdiction (as Tranzvia suggests); instead, it found, on its specific facts, that vicarious liability had not been alleged. On the other hand, in the case before the Court, Plaintiff has indeed alleged that Defendant directed Mr. Rose's telemarketing activity and that Defendant benefitted from it—***knowingly, as* Cunningham *reveals***. Dkt. No. 1 ¶¶ 17, 28-30, 35-37, 47-59.

Where no applicable federal statute addresses the issue, the district court applies the law of the state in which it is located to establish personal jurisdiction. *Glencore Grain Rotterdam B.V. v. Shuvnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002). "California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution." *Phan*, 2016 U.S. Dist. LEXIS 49219, at *3. Thus, analysis of specific jurisdiction in California asks whether (1) Tranzvia purposefully directed its activities to or consummated some transaction with California or a resident thereof, or performed some act by which it purposefully availed itself of the privilege of conducting activities in California, thereby invoking the benefits and protections of its laws; (2) the claim arises out of or relates to Tranzvia's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice. *Schwarzenegger v. Fred Martin*

*Motor Co.*, 374 F.3d 797, 801-02 (9th Cir. 2004). All three elements are satisfied in this case.

      1.    <u>Tranzvia Purposefully Directed Its Activities Toward California.</u>

The "purposeful direction" test is satisfied by (1) an intentional act by the defendant (2) expressly aimed at California, (3) causing harm that the defendant knows will likely be suffered in California. *Calder v. Jones*, 465 U.S. 783, 789-90 (1984); *Yahoo! Inc. v. La Lique Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). This test does not require the defendant's physical presence in California, provided the defendant's efforts are purposefully directed to forum residents. *Wash. Dep't of Revenue v. www.dirtcheapcig.com, Inc*., 260 F. Supp. 2d 1048, 1051 (W.D. Wash. 2003).

      a.    *Tranzvia's Acts Were Intentional.*

Courts have repeatedly held that sending a message into a forum state in violation of the TCPA, as here, confers specific personal jurisdiction over the defendant. *E.g.*, *Luna v. Shac, LLC*, No. C14-00607 HRL, 2014 WL 3421514, at *4 (N.D. Cal. July 14, 2014) (intentional sending of unsolicited text messages to California cell phone numbers was purposefully directed activity that subjected defendant to personal jurisdiction); *Baker v. Caribbean Cruise Line, Inc.,* No. CV 13-8246-PCT-PGR, 2014 WL 880634, at *2 (D. Ariz. Mar. 6, 2014) (specific jurisdiction proper in suit regarding unsolicited calls defendant made to plaintiff's forum state telephone); *Hudak v. Berkley Grp., Inc.,* No. 3:13-cv-00089-WWE, 2014 WL 354676, at **2-3 (D. Conn. Jan. 23, 2014) (same).

Here, the evidence of Tranzvia's intentional acts is clear. Tranzvia designed and implemented an automated telemarketing scheme aimed at numerous states, including California. Dkt. No. 1 ¶ 51 (alleging that Tranzvia selected the states that Mr. Rose called). The contract attached to Defendant's motion confirms that it intended telemarketing to be conducted. In an

effort to consummate the transaction, Tranzvia then intentionally placed multiple follow up telemarketing calls to Plaintiff in California. *Id.* ¶¶ 28, 35.

        b.     *Tranzvia's Acts Were Expressly Aimed at California.*

"The express aiming requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft & Masters v. Augusta Nat'l*, 223 F.3d 1082, 1087 (9th Cir. 2000).  For example, in *Tech Heads, Inc. v. Desktop Serv. Ctr., Inc.*, the court in Oregon found express aiming where the defendant

> purposefully reached out across the United States, including Oregon and around the world, not only through its Web site, but also through national advertising and a toll-free number. .... [Defendant] should therefore reasonably expect its actions to subject it to jurisdiction in states where its actions cause harm.

105 F. Supp. 2d 1142, 1150 (D. Or. 2000).  Here, Tranzvia devised and implemented a telemarketing scheme that deliberately targeted Californians at California area codes.  Tranzvia, which controlled the area codes that Mr. Rose would contact, knew that the calls were directed to California, where Plaintiff resides. Dkt. No. 1 ¶ 22 (alleging that Plaintiff's cell phone bears a (925) area code). Moreover, Tranzvia itself made follow-up calls into California in an attempt to close the leads generated by Mr. Rose.

        c.     *Tranzvia's Acts Caused Harm That It Knew Would Likely Be Suffered in California.*

The third and final element of purposeful direction is met because Tranzvia reasonably knew that the harm from its illegal telemarketing to California would be felt in California. *Gordon v. DTE Energy*, 680 F. Supp. 2d 1282, 1286 (W.D. Wash. 2010); *j2 Global Commc'ns, Inc. v. Blue Jay, Inc.*, No. C 08-4254 PJH, 2009 WL 29905, at *9 (N.D. Cal. Jan. 5, 2009) (Defendant knew or should have known that his conduct would cause plaintiff to suffer harm in

California.).  Courts in California and around the country have found the exercise of specific

personal jurisdiction proper in cases involving alleged TCPA violations based on calls made to a

plaintiff's cell phone in the forum state.  *See, e.g.*, *Luna,* 2013 WL 6571629; *Baker*, 2014 WL

880634; *Branham v. ISI Alarms, Inc.,* No. 12-CV-1012 (ARR) (MDG), 2013 U.S. Dist. LEXIS

124933, at *28 (E.D.N.Y. Aug. 30, 2013) ("[S]ince the TCPA is essentially a strict liability

statute ... defendants reasonably should have anticipated that the use of [an automated] system to

call a New York cell-phone number could subject them to being haled into court in New York."

(internal quotation marks and alteration marks omitted)); *Hudak*, 2014 WL 354676.  Like the

defendants in *Luna, Baker, Branham* and *Hudak*, Tranzvia reasonably should have known that

automated telemarketing to California residents would have an impact within California's

borders.

   2. <u>Plaintiff's Claims Against Tranzvia Relate to Activities in California.</u>

  Because Mr. Naiman would not have been injured "but for" Tranzvia's California-related

conduct, the second of the three jurisdictional elements is satisfied.  *See Doe v. Unocal Corp.,*

248 F.3d 915, 924 (9th Cir. 2001) ("but for" test).  Tranzvia and Mr. Rose instituted and

developed the plan for the robocalls at issue here.  But for Tranzvia's paying Mr. Rose to make

them, Dkt. 24-2 Ex. A ¶ 1, they would not have been made, and no invasion of privacy would

have been suffered by Plaintiff.

   3. <u>Requiring Tranzvia to Defend in California Is Not Unreasonable.</u>

  Once Plaintiff has made a prima facie showing that specific jurisdiction exists, the burden

shifts to Tranzvia to "present a compelling case that the presence of some other considerations

would render jurisdiction unreasonable."  *Am. Auto. Ass'n, Inc. v. Darba Enters., Inc.,* No. C 09-

00510 SI, 2009 U.S. Dist. LEXIS 37564, at *17 (N.D. Cal. Apr. 21, 2009) (quoting *Core-Vent*

*Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487 (9th Cir. 1993)).  Tranzvia has failed to carry this burden.

Seven factors are balanced to determine if the exercise of jurisdiction is unreasonable: (1) the extent of purposeful interjection by the defendant into the forum, (2) the burden on the defendant of defending in the forum, (3) the extend of conflict with the sovereignty of the defendant's home state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interests in convenient and effective relief, and (7) the existence of an alternate forum.  *Gordon*, 680 F. Supp. 2d at 1286.  The weight of these factors supports a finding of reasonableness.

### a.    *Purposeful Interjection*

Tranzvia purposefully interjected itself into California by buying telemarketing into California for Tranzvia's commercial benefit. Lest there be any doubt that Tranzvia knew that leads it was buying from Mr. Rose were in California, Tranzvia's ***own employees***—not just its third party agents such as Mr. Rose—called Plaintiff at a California area code.  Dkt. No. 1 ¶¶ 22, 28, 35.

### b.    *Burden on Defendant to Defend in California*

Tranzvia must show that the inconvenience of litigating in California is "so great as to constitute a deprivation of due process" so as to "overcome clear justifications for the exercise of jurisdiction." *Am. Auto. Ass'n*, 2009 WL 1066506, at *6 (N.D. Cal. Apr. 21, 2009) (*quoting Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998)).  Here, the burden of defending in California, rather than in Texas, is slight as "air travel is neither prohibitively expensive nor time consuming, and [Defendant] has retained local counsel." *Tech Heads*, 105 F. Supp. 2d at 1152; *see also Am. Auto. Ass'n*, 2009 WL 1066506, at *6 ("[A]dvances in

technology and discounted airfare do not make it unreasonable for defendant to litigate in California.").  Tranzvia does not contend otherwise.  Dkt. No. 24 at 10-11.

c.     *Sovereignty Concerns*

Very few sovereignty concerns are implicated by California's exercise of personal jurisdiction over Tranzvia.  The TCPA is a federal statute.  The agency analysis that will be central to this litigation is federal common law.  *Gomez v. Campbell-Ewald Co.,* 768 F.3d 871, 878 (9th Cir. 2014) (affording *Chevron* deference to FCC's invocation of federal common law in TCPA rulemaking), *aff'd*, 136 S. Ct. 663, 674 (2016), *as amended* (Feb. 9, 2016).  Accordingly, there is no conflict with Texas state law.  Nothing in Defendant's Motion suggests otherwise.  Dkt. No. 24 at 10-11.

d.     *Interest of the Forum State*

California has a strong interest in protecting Californians from nonconsensual telemarketing robocalls knowingly targeting them in California.  Tranzvia points to no countervailing interest of Texas courts in enforcing the rights of California-based TCPA plaintiffs or even Texas-based TCPA defendants.  Dkt. No. 24 at 10-11.

e.     *Efficient Resolution of the Case*

When evaluating this factor, courts focus on "the location of the evidence and the witnesses.  It is no longer weighed heavily given the modern advances in communication and transportation."  *Am. Auto. Ass'n*, 2009 WL 1066506, at *7 (*citing Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998)).  Here, Plaintiff is in the forum state. Plaintiff's documents are in the forum state.  While it is likely that many of Defendant's documents are in Texas, most of this evidence is electronically stored and thus efficiently transferrable.

Defendant's deposition can be taken in its home state of Texas.  Accordingly, the parties will be able to resolve the case efficiently.  Defendant does not suggest otherwise.  Dkt. No. 24 at 10-11.

f.   *Burden on Plaintiff to Litigate in Texas*

Plaintiff, an individual with no connection to Texas, would be unreasonably burdened by having to litigate and retain local counsel there.  This factor weighs in favor of jurisdiction in California.  *See Am. Auto. Ass'n*, 2009 WL 1066506, at *7 (Even a nation-wide organization is slightly inconvenienced by having to retain local counsel.).  Tranzvia does not argue otherwise. Dkt. No. 24 at 10-11.

g.   *Alternate Forum*

While an alternate forum is available in Texas, it is Tranzvia's burden to demonstrate that a transfer to this forum is more desirable than maintaining jurisdiction in California—a burden it has not carried.  Indeed, Tranzvia's Motion does not even argue that Texas is a superior jurisdiction for this case.  Dkt. No. 24 at 10-11.

Tranzvia, which directed a pre-recorded telemarketing campaign conducted by Mr. Rose, despite the fact that it had previously been sued for this same conduct, should be forced to defend this action in California. As this Court previously held in denying a similar motion to dismiss, "the evidence before the court reveals that [Defendant] was the 'guiding spirit' and the 'central figure' behind the alleged wrongdoing, i.e., unsolicited fax advertising, [a TCPA violation]." *j2 Global Commc'ns.*, 2009 U.S. Dist. LEXIS 1616, at *25. Similarly here, Tranzvia directed the activity, chose the recipients, and continued despite being previously sued.  It hardly offends traditional notions of fair play and substantial justice for it to be held to account in California.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss.

## V.   <u>SIGNATURE ATTESTATION</u>

The ECF user filing this paper attests that concurrence in its filing has been obtained from each of the other signatories.

RESPECTFULLY SUBMITTED AND DATED this 24th day of October, 2017.

BRODERICK & PARONICH, P.C.

By:   _/s/ Anthony I. Paronich_
Anthony I. Paronich, *Admitted Pro Hac Vice*
Email: anthony@broderick-law.com
99 High Street, Suite 304
Boston, Massachusetts 02110
Telephone:  (508) 221-1510
Facsimile:  (617) 830-0327

*Attorneys for Plaintiff and the Proposed Classes*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 24, 2017, I filed a copy of the foregoing on the Court's CM/ECF system, which will send a copy to all counsel of record.

_/s/ Anthony I. Paronich_
Counsel for Plaintiff