1
2
3
4          UNITED STATES DISTRICT COURT
5          NORTHERN DISTRICT OF CALIFORNIA
6

7   SIDNEY NAIMAN,
                                              Case No.  17-cv-4813-PJH
8              Plaintiff,

9       v.                                    **ORDER GRANTING MOTION TO
                                              DISMISS**
10  TRANZVIA LLC,

11             Defendant.

12

13

14          Before the court is defendant's motion to dismiss the complaint in the above-

15  entitled action for failure to state a claim and lack of personal jurisdiction.  Having read

16  the parties' papers and carefully considered their arguments and the relevant legal

17  authority, the court hereby GRANTS the motion as follows.

18                              **BACKGROUND**

19          Plaintiff Sidney Naiman filed the complaint in this proposed class action on August

20  18, 2017, alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227

21  ("TCPA").  The sole defendant is TranzVia LLC (TranzVia"), a Delaware limited liability

22  company with its principal place of business in Texas.  Plaintiff claims that TranzVia does

23  business throughout the United States, and that it "offers various payment technologies

24  for businesses."  Cplt ¶ 15.

25          The TCPA contains prohibitions concerning calls made to wireless telephone lines

26  and to residential telephone lines.  The statute provides that "[i]t shall be unlawful for any

27  person within the United States, or any person outside of the United States if the recipient

28  is within the United States

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice –

. . .

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States;

(B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order by the Commission . . . .

47 U.S.C. § 227(b)(1)(A), (B).

Plaintiff seeks to hold TranzVia vicariously liable for two telephone calls allegedly made in violation of the TCPA by a telemarketer. Plaintiff claims that TranzVia "hired" the telemarketer to act as its agent in marketing its payment services. In the complaint, plaintiff asserts causes of action for violation of 47 U.S.C. § 227(b)(1)(A) and "knowing and willful" violation of § 227(b)(1)(A) (entitling plaintiff to treble damages); and for violation of 47 U.S.C. § 227(b)(1)(B) and "knowing and willful" violation of § 227(b)(1)(B) (entitling plaintiff to treble damages).

Plaintiff alleges that TranzVia's "strategies" for marketing its payment services included hiring Gordon Rose ("Rose"), described as "an individual who operates a telemarketing company." Cplt ¶ 17. While plaintiff claims that TranzVia "hired" Rose, however, he does not elaborate and does not explain in what capacity Rose was "hired." Plaintiff asserts that Rose generated new customers by "use of an automatic telephone dialing system ('ATDS') to solicit business." Cplt ¶ 18. He alleges that Rose uses ATDS equipment that has "the capacity to store or produce telephone numbers to be called, that includes autodialers and predictive dialers, and that plays a prerecorded message once the calls connect." Cplt ¶ 19.

2

Plaintiff claims that on June 8, 2017, his cell phone number "was called with a prerecorded message by Mr. Rose's office." Cplt ¶¶ 22-23. The caller ID showed that the call was from the phone number (270) 594-7041. Cplt ¶ 24. According to plaintiff, "when the call was answered," there was a lengthy pause and a click followed by silence before a voice came on the line, which plaintiff asserts "indicated that the call was made using an ATDS." Cplt ¶ 25. Following the lengthy pause and extended silence, "a prerecorded message played words to the effect that the call was being made to sell credit card processing services[,]" and "[t]he called party was instructed to press a button on his telephone for further information." Cplt ¶ 26.

Rather than hanging up, however, "the recipient pressed the button for further information and was instructed by another prerecorded voice to leave a voice message with a telephone number." Cplt ¶ 27. Plaintiff asserts that "[s]hortly after leaving his voice message," he received a call from Brandon Arvizu ("Arvizu"), who "claimed to be with TranzVia" and who "proceeded to try to sell TranzVia products." Cplt ¶ 28. The number Arvizu is alleged to have called from is (209) 257-6277. Cplt ¶ 29. Plaintiff claims that following the phone call, Arvizu sent him emails from "a TranzVia email address," again "attempting to sell TranzVia products." Cplt ¶ 30.

Plaintiff alleges that he received another prerecorded message – this time on his residential phone line – also in June 2017. Cplt ¶ 31. He does not say who he believes this call was from. Again, however, "[w]hen the call was answered, there was a lengthy pause and a click followed by silence before any voice came on the line," which plaintiff asserts means that the call was made using an ATDS. Cplt ¶ 32. Following the lengthy pause and extended silence, "a prerecorded message played words to the effect that the call was being made to sell credit card processing services[,]" and "[t]he called party was instructed to press a button on his telephone for further information." Cplt ¶ 33.

Again, rather than hanging up, "the recipient pressed the button for further information and was instructed by another prerecorded voice to leave a voice message with a telephone number." Cplt ¶ 34. Shortly after leaving a voice message, "[p]laintiff

received a call" from Jassan Sanford ("Sanford"), who "claimed to be with TranzVia" and who "proceeded to try to sell TranzVia products." Cplt ¶ 35. As with Arvizu, plaintiff alleges that Sanford called from phone number (209) 257-6277. Cplt ¶ 36. After the phone call, Sanford allegedly sent plaintiff e-mails from "a TranzVia e-mail address" again "attempting to sell TranzVia products." Cplt ¶ 37.

Plaintiff asserts that he has never been a customer of TranzVia and that he did not give consent to receive prerecorded calls "from, or on behalf of, TranzVia," and also claims that the calls invaded his privacy and were "annoying" and "harassing." Cplt ¶¶ 20, 39-40. He does not allege that the prerecorded calls were from TranzVia, but rather that the call to his cell phone was from "Rose's office." Nevertheless, he alleges, TranzVia was "legally responsible" for ensuring that Rose complied with the TCPA, even if TranzVia did not itself make the calls. Cplt ¶ 47.

Plaintiff does not explain the basis for his belief that the call to his cell phone came from "Rose's office," and does not say who the call to his residential phone was from. He asserts only that after he requested "further information," Arvizu and Sanford each called from the same number and that each sent emails from "a TranzVia e-mail address" attempting to sell TranzVia products." Cplt ¶¶ 28-30, 35-37.

TranzVia attaches to its motion a copy of a "Marketing Agency Agreement" ("Agreement") dated November 8, 2016, between Arris Holdings LLC ("Arris"), a Delaware limited liability company, and TranzVia. The Agreement, which bears the signatures of Gordon Rose, CEO of Arris, and Paul Nee, CEO of TranzVia, provides that Arris will provide between 175 and 490 sales leads per day to TranzVia. Agreement ¶ 1. The Agreement defines "sales lead" as "at least the name and telephone number of a business prospect who has, according to Arris's audited response data, opted to receive information about merchant processing services of the type offered by TranzVia." Id.

Although the Agreement is not specifically referenced in the complaint, TranzVia argues that plaintiff's claims depend on the Agreement because of the allegation regarding the "hiring" of Rose, see Cplt ¶ 17; the allegation concerning TranzVia's

"arrangement" with Rose, which made TranzVia "legally responsible" for ensuring that Rose complied with the TCPA, see Cplt ¶ 47; and the allegation regarding TranzVia's "engaging" Rose to "make calls on behalf of TranzVia's agents to generate new business," see Cplt ¶ 59.

Plaintiff asserts that TranzVia "knowingly and actively accepted business that originated through the illegal telemarketing calls" from Rose. Cplt ¶ 48. He alleges that in hiring a company to make calls on its behalf, TranzVia "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control." Cplt ¶ 49 (quoting Restatement (Third) of Agency). He alleges that "by accepting these contracts, the company that Rose hired [sic] manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of TranzVia, and as such, plaintiff contends, Rose and "the company" are agents of TranzVia. Cplt ¶ 50.

Plaintiff claims that TranzVia "had control over Mr. Rose's actions on its behalf." Cplt ¶ 51. For example, plaintiff asserts, TranzVia "limited the types of businesses" that Rose could solicit for TranzVia; it "restricted the geography" within which Rose could promote TranzVia; it "decided whether, and under what circumstances, it would accept a customer" from Rose; it "instructed" Rose with respect to "the volume of calling and the number of leads it would purchase[;]" and it "had day-to-day control" over Rose's actions, including "the ability to prohibit him from using an ATDS to contact potential customers of TranzVia." See Cplt ¶ 51(a)-(e).

Although there are no facts pled to support the allegations in ¶ 51 regarding TranzVia's "control" over Rose's actions, plaintiff asserts that TranzVia "failed to prohibit" Rose from using an ATDS to contact potential customers of TranzVia. Cplt ¶ 52. He alleges that Rose "transferred prospective customer information, including information about [p]laintiff, directly to TranzVia[;]" and claims that because "the company that TranzVia hired" had the ability to "enter consumer information into the seller's sales or customer systems," that company is an "apparent agent of TranzVia." Cplt ¶ 53.

Plaintiff alleges that TranzVia "knew" that Rose was violating the TCPA on its

behalf and allowed him to continue. Cplt ¶ 54. He asserts that TranzVia received other complaints regarding Rose's telemarketing, and the fact that it was violating the TCPA. Cplt ¶ 55. He cites two anonymous comments on websites that allow consumers to complain about phone numbers used in telephone spam operations. See Cplt ¶ 56.

Plaintiff also notes that TranzVia was sued in Texas in November 2016 for TCPA violations allegedly relating to the conduct of Rose. Cplt ¶ 57 (citing Cunningham v. TranzVia, C-16-0905 (E.D. Tex. Nov. 26, 2016)). Plaintiff claims that TranzVia entered an appearance in the Cunningham case (when it moved to dismiss the original complaint) five months before the June 2017 calls described above, and that TranzVia nevertheless continued to do business with Rose and had him engage in prerecorded telemarketing until August 2017. Cplt ¶ 58. Plaintiff asserts that by engaging Rose to make calls on behalf of TranzVia's agents to generate new business, and by accepting the benefits of the resulting sales of TranzVia's products, TranzVia "ratified" the use of unlawful calls in this case. Cplt ¶ 59.

TranzVia now seeks an order dismissing the complaint for failure to state a claim and for lack of personal jurisdiction. TranzVia argues that there are no facts alleged showing that it is liable for any calls made by Rose, under an agency theory or otherwise. TranzVia also asserts that there are no facts alleged showing that the court has general personal jurisdiction over TranzVia, and that there are also no facts alleged supporting specific personal jurisdiction, because the only alleged violations of the TCPA were committed by Rose, not TranzVia. And, TranzVia adds, even if the court accepts plaintiff's agency theory, there are no facts showing the court has personal jurisdiction over Rose (who in any event is not a defendant).

**DISCUSSION**

A.    Legal Standards

1.    Motions to dismiss for failure to state a claim

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).

Under the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); see also In re Gilead Scis. Secs. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679. Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

Review is generally limited to the contents of the complaint, although the court can also consider a document on which the complaint relies if the document is central to the claims asserted in the complaint, and no party questions its authenticity. See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007). That is, where documents are referenced extensively in the complaint, form the basis of plaintiffs' claim, or are subject to judicial notice, the court may consider those documents in the context of a motion to dismiss. United States v. Ritchie, 342 F.3d 903, 908–09 (9th Cir. 2003); see also Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Hal Roach Studios, Inc. v. Richard Feiner & Co.,

Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).

 2.    Motions to dismiss for lack of personal jurisdiction

The party seeking to invoke the federal court's jurisdiction bears the burden of demonstrating jurisdiction.  Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015).  When resolving a motion to dismiss under Rule 12(b)(2) on written materials, the court accepts uncontroverted facts in the complaint as true and resolves conflicts in affidavits in plaintiff's favor.  Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011).  Where the defendant's motion is based on a written record and no evidentiary hearing is held, the plaintiff need only make a prima facie showing of jurisdictional facts.  Picot, 780 F.3d at 2011.

The Due Process Clause of the Fourteenth Amendment "limits the power of a state's courts to exercise jurisdiction over defendants who do not consent to jurisdiction."  Martinez v. Aero Caribbean, 764 F.3d 1062, 1066 (9th Cir. 2014).  Due process requires that the defendant "have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. State of Wash., 326 U.S. 310, 315 (1945) (quotations omitted).  Under the "minimum contacts" analysis, a court can exercise either "general or all-purpose jurisdiction," or "specific or conduct-linked jurisdiction."  Daimler AG v. Bauman, 134 S. Ct. 746, 751 (2014) (citing Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)); see Int'l Shoe, 326 U.S. at 316-20.

Under general jurisdiction, a nonresident defendant may be subject to suit even on matters unrelated to his/her/its contacts with the forum.  Daimler, 134 S. Ct. at 754-58.  To establish general jurisdiction, the plaintiff must demonstrate that the defendant has continuous and systematic contacts sufficient to approximate physical presence in the state.  In re W. States Wholesale Natural Gas Antitrust Litig., 715 F.3d 716, 741 (9th Cir. 2013).  If the defendant is a foreign corporation, the plaintiff must establish that the defendant has "affiliations so continuous and systematic as to render [it] essentially at home in the forum State, . . . i.e., comparable to a domestic enterprise in that State."

1    <u>Daimler</u>, 134 S. Ct. at 758 n.11 (citation omitted).  The paradigm fora for the exercise of

2    general jurisdiction over a corporation are the place of incorporation and the principal

3    place of business, and only in an "exceptional case" will general jurisdiction be available

4    elsewhere.  <u>Id.</u> at 760-61 & n.19.

5         In the absence of general jurisdiction, a court may exercise specific jurisdiction

6    over a defendant if his/her/its less substantial contacts with the forum gave rise to the

7    claim or claims pending before the court – that is, if the cause of action "arises out of" or

8    has a substantial connection with that activity.  <u>Hanson v. Denckla</u>, 357 U.S. 235, 250-53

9    (1958); <u>see also</u> <u>Goodyear</u>, 131 S. Ct. at 2854.  The inquiry into whether a forum state

10   may assert specific jurisdiction over a nonresident defendant focuses on the relationship

11   among the defendant, the forum, and the litigation.  <u>Walden v. Fiore</u>, 134 S. Ct. 1115,

12   1121 (2014).

13        Specific jurisdiction is analyzed using a three-part test:  First, the nonresident

14   defendant must have purposefully directed his activities or consummated some

15   transaction with the forum or a forum resident, or performed some act by which he

16   purposefully availed himself of the privilege of conducting activities in the forum, thereby

17   invoking the benefits and protections of its laws; second, the claim must be one which

18   arises out of or relates to the nonresident defendant's forum-related activities; and third,

19   the exercise of jurisdiction must comport with fair play and substantial justice, <u>i.e.</u>, it must

20   be reasonable.  <u>See</u> <u>Picot</u>, 780 F.3d at 1211.  If the plaintiff is successful at establishing

21   the first two prongs, the burden shifts to the defendant to set forth a compelling case that

22   the exercise of jurisdiction would not be reasonable.  <u>Id.</u> at 1211-12.

23        With regard to the first prong, the "purposeful availment" standard and the

24   "purposeful direction" standard are two distinct concepts.  <u>Washington Shoe Co. v. A-Z</u>

25   <u>Sporting Goods Inc.</u>, 704 F.3d 668, 672 (9th Cir. 2012).  For claims sounding in contract,

26   courts apply the "purposeful availment" analysis, asking whether the defendant has

27   "purposefully avail[ed]" itself of "the privilege of conducting activities within the forum

28   State, thus invoking the benefits and protections of its laws."  <u>Schwarzenegger v. Fred</u>

Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (quoting Hanson, 357 U.S. at 253); see Picot, 780 F.3d at 1212.

For claims sounding in tort, courts apply the "purposeful direction" test. Schwarzenegger, 374 F.3d at 802-03. The plaintiff must show that the defendant committed an intentional act, expressly aimed at the forum state, causing harm that the defendant knows is likely to be suffered in the forum state. Calder v. Jones, 465 U.S. 783, 789-90 (1984); Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002).

B.     TranzVia's Motion

Plaintiff does not assert a claim of direct liability against TranzVia for violation of the TCPA, but rather alleges that TranzVia is vicariously liable, because Rose, acting as TranzVia's agent, violated the TCPA. "[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." Jones v. Royal Admin. Servs., Inc., 866 F.3d 1100, 1105 (9th Cir. 2017) (quoting Gomez v. Campbell-Ewald Co., 768 F.3d 871, 877-78 (9th Cir. 2014)).

Plaintiff asserts that the June 8, 2017 call to his cell phone was made by "Mr. Rose's office." Cplt ¶ 23. However, TranzVia asserts, plaintiff fails to allege facts sufficient to show that TranzVia can be held vicariously liable for any call made by Rose, under any theory of agency.

"Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Jones, 866 F.3d at 1105 (citing Restatement (Third) of Agency § 1.01). "'For an agency relationship to exist, an agent must have authority to act on behalf of the principal and '[t]he person represented [must have] a right to control the actions of the agent.'" Id. (quoting Restatement (Third) of Agency § 1.01 cmt. c).

Plaintiff contends that TranzVia is liable under various theories of agency, including actual authority, apparent authority, and ratification. Plaintiff alleges that

10

TranzVia is "legally responsible for ensuring that Rose complied with the TCPA" even if TranzVia did not itself make the calls (Cplt ¶ 47); that TranzVia "knowingly and actively accepted business that originated through the illegal telemarketing calls" from Rose (Cplt ¶ 48); that by "hiring a company to make calls on its behalf," TranzVia "manifest[ed] assent" to another person (Cplt ¶ 49); that by "accepting these contracts," the company Rose hired "manifest[ed] assent or otherwise consent[ed]" to act on behalf of TranzVia (Cplt ¶ 50); that TranzVia "had control over" Rose's actions on its behalf (Cplt ¶ 51); that by engaging Rose to "make calls on behalf of TranzVia's agents to generate new business," and by "accepting the benefits of the resulting sales of TranzVia's products," TranzVia thereby "ratified the use of unlawful calls" (Cplt ¶ 59).

To state a plausible claim based on Rose's actual authority, plaintiff must allege facts showing that TranzVia had the right to control Rose and the manner and means of the calls Rose made. See Thomas v. Taco Bell Corp., 583 Fed. Appx 678, 679-80 (9th Cir. 2014). TranzVia argues that the court need not accept as true the bare legal conclusion that it is liable for Rose's acts, and that such an allegation is not sufficient to state a plausible claim for relief under the circumstances, given that plaintiff has not pled a single fact demonstrating that TranzVia actually had control over Rose such that it can be held vicariously liable for any of Rose's purported violations of the TCPA.

Alternatively, plaintiff must allege facts showing TranzVia's vicarious liability under an alter ego theory or principles of apparent authority or ratification. See Thomas v. Taco Bell Corp., 879 F.Supp.2d 1079, 1084-85 (C.D. Cal. 2012); Panacci v. A1 Solar Power Inc., 2015 WL 3750112 at *7 (N.D. Cal. June 15, 2015).

To state a plausible claim under an apparent authority theory, plaintiff must allege facts showing that TranzVia did or said something sufficient to create a reasonable belief that Rose had authority to act on behalf of TranzVia. See Restatement (Third) of Agency § 2.01; see also In re Fresh & Process Potatoes Antitrust Litig., 834 F.Supp. 2d 1141, 1167-68 (D. Idaho 2011). Apparent authority cannot be shown by allegations that the alleged agent "claimed authority or purported to exercise it." NLRB v. Dist. Council of

11

To state a plausible claim under a ratification theory, plaintiff must allege facts showing that TranzVia ratified acts taken by Rose by knowingly accepting the benefits of those acts. See Restatement (Third) of Agency § 4.01. However, a principal is not bound by a ratification made "without knowledge of material facts about the agent's act." Restatement (Third) of Agency § 4.01 cmt. b.

TranzVia contends that plaintiff fails to allege facts sufficient to state a plausible claim under principles of apparent authority or ratification. TranzVia asserts that the only fact that connects the call (by "Mr. Rose's office") to plaintiff's cell phone, and the call to his residential phone, is his allegation that after he left a voicemail in response to the calls indicating he would like to receive additional information, a representative of TranzVia called him. See Cplt ¶¶ 28, 35. TranzVia claims that this allegation, even if taken as true, is insufficient to show that TranzVia controlled, authorized, or even knew about Rose's calls or that TranzVia had any control over the manner or means by which Rose made calls.

TranzVia asserts further that plaintiff's claims fail because, pursuant to the November 8, 2016, Agreement between TranzVia and Arris, TranzVia is not liable for Rose's conduct. TranzVia argues that the Agreement makes clear that it did not "hire" Rose, but rather that it had a contractual arrangement with Arris, of which Rose was the CEO. Moreover, TranzVia asserts, the terms of the Agreement make clear that it did not control Arris or the means by which Arris made calls.

TranzVia points to the provision in the Agreement stating that "Arris shall have sole and complete discretion as to the messages it transmits in order to obtain potential lead data, as well as the process Arris uses to audit the initial response data before providing leads to TranzVia." Agreement ¶ 11. Further, TranzVia asserts, the Agreement states that the relationship between Arris and TranzVia "shall be that of independent contractors only" and that in performing the Agreement, the parties are acting as independent contractors and "not as an employee or agent of the other[;]" and

further, that "the parties shall have no authority, express or implied, to commit, bind, or obligate the other to any third parties." Agreement ¶ 13.

TranzVia also argues that the claims against it should be dismissed for lack of personal jurisdiction. TranzVia contends that there is no general jurisdiction because it is a Delaware LLC with its principal place of business in Texas, and there are no facts pled showing that it engages in continuous and systematic general business contacts that approximate physical presence in California. As for specific jurisdiction, plaintiff alleges that this court has personal jurisdiction over TranzVia "because a substantial part of the wrongful acts alleged in this [c]omplaint were committed in California." Cplt ¶ 5. TranzVia asserts, however, that the only potentially "wrongful acts" alleged in the complaint were committed by Rose and not TranzVia. Further, TranzVia argues, even assuming that it could be held vicariously liable for Rose's acts, plaintiff has not alleged any facts showing that the court has personal jurisdiction over Rose, the purported agent.

In opposition, plaintiff asserts that the complaint adequately alleges that TranzVia is vicariously liable for Rose's telemarketing, under agency theories of actual authority, apparent authority, and ratification. First, plaintiff asserts that the complaint pleads facts sufficient to show that Rose had "actual authority" to make the prerecorded telemarketing calls at issue here, because the complaint alleges that TranzVia controlled specifics of the calls, knew of their illegal nature, and paid for them to continue. Plaintiff also argues that by continuing to pay Rose for leads after their allegedly illegal origins had been brought to its attention via the allegations in the <u>Cunningham</u> lawsuit, TranzVia impliedly conveyed to Rose that it wished him to "keep calm and carry on."

Plaintiff concedes that the Agreement includes provisions requiring TranzVia to observe do-not-call requests and to follow FCC regulations, and that it also indicates that Arris is not TranzVia's agent, and that Arris is an independent contractor. Agreement ¶¶ 2, 12-14. However, plaintiff dismisses those provisions as a "wink-wink, see-no-evil defense" which he claims "might have carried the day before <u>Cunningham</u>," which case he claims "undisputedly put [TranzVia] on notice." According to plaintiff, "[t]he jig was up

1  – or should have been."  See Opp. at 7-8.

2  Second, plaintiff contends that TranzVia "donned" Rose with "apparent authority"

3  by granting him access to its customer relationship management ("C.R.M.") System,

4  which would (according to plaintiff) normally be within TranzVia's exclusive control.  This

5  argument is not based on any facts pled in the complaint, but rather on the provision in

6  the Agreement that "[o]pt-in Sales Leads will be uploaded into TranzVia's C.R.M. by Arris

7  employees."  See Agreement ¶ 1.

8  Finally, plaintiff contends that the complaint pleads facts sufficient to support all

9  elements of a ratification theory of liability, which (according to plaintiff) include illegal

10  telemarketing by Rose (or Arris) on TranzVia's behalf; TranzVia's benefit from the

11  telemarketing; and TranzVia's knowledge of its illegality.  In particular, plaintiff asserts

12  that TranzVia was aware of the improper telemarketing by Rose because it was sued in a

13  similar TCPA case – Cunningham – in 2016.  Plaintiff contends that the fact that TranzVia

14  was previously sued for improper telemarketing is sufficient to show awareness of

15  illegality, notwithstanding that the case that purportedly supplied that awareness

16  (Cunningham) was filed in a Texas court by a different plaintiff, and was dismissed before

17  any substantive ruling was made by the court.

18  In his second main argument, plaintiff asserts that the court has specific personal

19  jurisdiction over TranzVia.  (He appears to have conceded that there is no general

20  jurisdiction.)  With regard to the first prong of the specific jurisdiction test, plaintiff

21  contends that TranzVia purposefully directed its activities toward California.

22  Plaintiff argues that TranzVia's acts were intentional, because it designed and

23  implemented an automated telemarketing scheme aimed at numerous states, including

24  California.  Plaintiff claims that the Agreement between TranzVia and Arris confirms that

25  TranzVia intended that telemarketing be conducted, and contends that this intention is

26  underscored by the fact that in an effort to "consummate" the transaction, TranzVia

27  placed multiple (two) follow-up telemarketing calls to plaintiff in California.

28  Plaintiff also asserts that TranzVia's acts were expressly aimed at California,

14

because the telemarketing was targeted at plaintiff. Plaintiff claims that TranzVia's telemarketing scheme targeted Californians at California area codes, and that it knew that the calls were being directed to California, where plaintiff resides, and that it engaged in follow-up calls in an attempt to close the leads generated by Rose. Plaintiff contends that TranzVia's acts caused harm that it knew would likely be suffered in California, as TranzVia reasonably should have known that automated telemarketing to California residents would have an impact within California's borders.

Second, plaintiff asserts that TranzVia's acts relate to activities in California. He contends that because he would not have been injured "but for" TranzVia's California-related conduct (making the phone calls), the second of the three elements of specific jurisdiction is met. He claims that TranzVia and Rose "instituted and developed the plan for the robocalls at issue here," and that but for TranzVia's paying Rose to make the calls, they would not have been made, and there would have been no invasion of privacy.

Third, plaintiff contends that once he has made a prima facie showing of the first two factors, the burden shifts to TranzVia to present a compelling case that the presence of some other consideration would render jurisdiction unreasonable. See Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1487-88 (9th Cir. 1993). Plaintiff suggests that TranzVia cannot make such a showing, because requiring TranzVia to defend in California would not be unreasonable.

The court finds that the motion must be GRANTED. First, with regard to personal jurisdiction, if plaintiff alleged facts showing TranzVia (the sole named defendant) had intentionally made unsolicited calls to plaintiff's cell phone (and residential phone) numbers, both of which have the California area code 925, such facts could show purposeful direction to California such that TranzVia would be reasonably subject to the personal jurisdiction of this court. See, e.g., Ewing v. McCarthy, 2017 WL 4810098 at *3 (S.D. Cal. Oct. 25, 2017); Luna v. Shac, LLC, 2014 WL 3421514 at *3 (N.D. Cal. July 14, 2014); Heidorn v. BDD Marketing & Mgmt. Co., 2013 WL 6571629 (N.D. Cal. Aug. 19, 2013). The burden would then shift to TranzVia to show that it would be unreasonable

for it to be subject to jurisdiction in California.

Here, however, plaintiff does not allege that TranzVia made the two calls at issue. The complaint asserts that TranzVia "hired" Rose to "generate new customers" for TranzVia to market its payment services. However, the Agreement, which plaintiff does not challenge, and which is attached to TranzVia's motion, is an agreement between TranzVia and Arris. The Agreement bears the signature of Rose, as CEO of Arris, but Rose is not a contracting party (and plaintiff does not allege that he is).

Nor does plaintiff directly allege that Rose himself made the disputed calls or that he directed or oversaw the equipment that made the disputed calls. Plaintiff asserts that Rose had a "strategy for generating new customers" which involved the use of an ATDS to solicit business. Cplt ¶ 18-19. He also alleges that TranzVia "accepted business that originated through the illegal telemarketing calls from Mr. Rose," Cplt ¶ 48; that TranzVia "hir[ed] a company to make calls on its behalf," Cplt ¶ 49; that "the company that Mr. Rose hired [sic] 'manifest[ed] assent or otherwise consent[ed] . . . to act' on behalf of TranzVia, Cplt ¶ 50; that "TranzVia had control over Mr. Rose's actions on its behalf," Cplt ¶ 51; that "TranzVia failed to prohibit Mr. Rose from using an ATDS to contact potential customers of TranzVia," Cplt ¶ 52; and that Rose "transferred prospective customer information, including information about [p]laintiff, directly to TranzVia."

In order to demonstrate that the court has personal jurisdiction over TranzVia based on Rose's conduct, plaintiff must put forth evidence showing that Rose is subject to this court's jurisdiction, and that Rose's actions are attributable to TranzVia because Rose was TranzVia's agent with respect to the calls that Rose allegedly made to plaintiff. It is only when the acts of an agent can be imputed to the principal that the court can exercise personal jurisdiction over the principal for those acts. See Piping Rock Partners, Inc. v. David Lerner Assocs., Inc., 2012 WL 5471143 at *8 (N.D. Cal. Nov. 9, 2012) (citing Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 414 (9th Cir. 1977)) ("The Court's jurisdiction over an agent imputes to the principal when the agent's conduct, on behalf of the principal, gives rise to the cause of action.")

16

But rather than naming Rose and Arris as defendants, plaintiff alleges violation of the TCPA solely on an agency theory, but without pleading facts sufficient to show that Rose and/or Arris were agents of TranzVia. However, as discussed below, plaintiff fails to plead <u>facts</u> showing that TranzVia entered into any arrangement with, or exercised control over, Rose individually. Even ignoring the distinction between Rose individually and Rose's acts as the CEO of Arris (with which TranzVia did have a contract), the terms of the Agreement make clear that TranzVia did not control Arris or the manner or means in which Arris made calls.

In his opposition, plaintiff principally relies on the theory that TranzVia "ratified" Rose's conduct. However, to be liable (and hence subject to personal jurisdiction) for TCPA violations under a ratification theory, the principal must either (1) have actual knowledge of all material facts about the agent's act or (2) should have known of the actual facts because a reasonable person under the circumstances would have investigated further. <u>See</u> Restatement (Third) of Agency §§ 4.06, 4.01 cmt. b; <u>see also</u> <u>Johansen v. HomeAdvisor, Inc.</u>, 218 F. Supp. 3d 577, 587 (S.D. Ohio 2016); <u>Smith v. State Farm Mut. Auto. Ins. Co.</u>, 30 F.Supp.3d 765, 779 (N.D. Ill. 2014).

Plaintiff's response fails to show either that TranzVia had actual knowledge or should have known of the actual facts. The <u>Cunningham</u> case is not "evidence" that TranzVia is liable for Rose's calls to plaintiff, because the mere fact that TranzVia was previously sued does not provide factual support for plaintiff's conclusory statements that TranzVia "must have been aware of" Rose's offending conduct and nonetheless cloaked Rose with authority to act for TranzVia and ratified Rose's allegedly offending conduct with respect to plaintiff.

As for whether the complaint states a claim against TranzVia, the TCPA assigns civil liability to the party who "makes" the call. See 47 U.S.C. § 227(b)(1)(A). "[V]icarious liability can provide the basis for liability for a TCPA violation." <u>Thomas v. Taco Bell Corp.</u>, 582 Fed. Appx. 678, 679 (9th Cir. 2014). Plaintiff asserts that the complaint adequately alleges agency under theories of actual authority, apparent authority, and

17

ratification.

Agency can be established expressly, via a showing of actual authority, or it can be inferred, by finding apparent authority or ratification. Restatement (Third) of Agency §§ 2.01, 2.03, 4.01. Here, plaintiff does not allege facts showing a traditional or classical agency relationship between TranzVia and Rose (who plaintiff seems to be asserting is the person responsible for the recorded phone calls). In order to allege a traditional agency relationship, plaintiff would have to allege facts showing that TranzVia "controlled or had the right to control [the entity responsible for the phone calls] and, more specifically, the manner and means of the [phone call campaign Rose allegedly] conducted." Thomas v. Taco Bell Corp., 879 F. Supp. 2d 1079, 1085 (C.D. Cal. 2012), aff'd, 582 Fed.Appx. 678 (9th Cir. 2014). "Agency means more than mere passive permission; it involves request, instruction, or command." Id. (quoting Klee v. United States, 53 F.2d 58, 61 (9th Cir. 1931)).

The complaint does not allege any facts showing that TranzVia had any control, or any express or actual authority, over Rose or any associated entity that made the phone calls. A plaintiff must allege facts, not conclusions, and the court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory allegations cast in the form of factual allegations. See, e.g., Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

Plaintiff takes issue with TranzVia's argument that ¶ 51 of the complaint comprises a series of conclusory and unsupported statements that TranzVia had control over Rose's actions on its behalf. Plaintiff argues that the allegations in ¶ 51 of the complaint show that TranzVia had control over Rose's actions on its behalf. However, plaintiff does not point to any facts that support the conclusory allegations in ¶ 51, though he does claim that the Agreement between Arris and TranzVia confirms at least one of them (referring to ¶ 51(d)), as it instructs Rose with respect to the volume of calling and the number of leads TranzVia would purchase ("Arris shall provide to TranzVia one-hundred and seventy-five to three-hundred (175-300) Sales Leads per day. Arris shall provide at

1   least 90% of the daily leads by 4 p.m. Central time.")  He does not acknowledge,

2   however, that this provision includes no instruction regarding how Arris is to obtain those

3   leads, and does not even mention Rose.

4          The court finds that allegations in ¶ 51 of the complaint, which plaintiff asserts

5   show that "TranzVia had control over Mr. Rose's actions on its behalf," are insufficient to

6   demonstrate that plaintiff has a plausible claim for relief against TranzVia based on

7   TranzVia's alleged vicarious liability for Rose's acts.  For example, the conclusions that

8   "TranzVia limited the types of business [Rose] could solicit," "restricted the geography

9   within which [Rose] could promote TranzVia," "decided whether . . . it would accept a

10  customer from [Rose]," "instructed [Rose] with respect to the volume of calling," and "had

11  day-to-day control over [Rose's] actions" – without any facts showing how TranzVia did

12  those things or how it knew those things, or what facts the allegations are based on – are

13  not facts that allow the court to draw the reasonable inference that TranzVia is vicariously

14  liable for Rose's alleged misconduct.  Even the allegation that TranzVia instructed Rose

15  "with respect to . . . the number of leads it would purchase," is not supported by facts, as

16  the contractual provision regarding the number of leads TranzVia would purchase is part

17  of the Agreement between Arris and TranzVia, and Rose is not a party to that

18  Agreement.

19         Moreover, the Agreement clearly provides that, in return for a specified payment,

20  Arris would provide sales leads to TranzVia; that Arris would have "sole and complete

21  discretion as to the messages it transmits in order to obtain potential lead data, as well as

22  to the process Arris uses to audit the initial response data before providing leads to

23  TranzVia[;]" that "[t]he business relationship between Arris and TransVia shall be that of

24  independent contractors only" – and that no party shall act "as an employee or agent of

25  the other[;]"  and that each party will comply with all applicable laws and regulations, and

26  "[i]n particular, Arris will act in good faith to facilitate campaign compliance with FCC,

27  FTC, and state regulations until the point of lead delivery," at which point "TranzVia shall

28  become solely responsible and liable for the use of such leads."  Agreement ¶¶ 1, 4, 11,

13, 14. There are no facts alleged showing that TranzVia controlled Rose (or even that it controlled Arris).

Further, plaintiff fails to allege facts sufficient to show either apparent authority or ratification. "Apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when that belief is reasonable and is traceable to a manifestation of the principal." Restatement (Third) of Agency § 2.03 cmt. c. "[T]he ostensible authority of an agent cannot be based solely upon the agent's conduct." C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc., 213 F.3d 474, 480 (9th Cir. 2000). The third party's belief must not only be reasonable, but also "traceable" to the principal's manifestations. See Restatement (Third) of Agency § 2.03 (2006).

Plaintiff does not reference any facts supporting liability under a theory of apparent authority. Instead, plaintiff simply argues that TranzVia "continued to engage Rose" even after it had entered an appearance in the Cunningham case by moving to dismiss the complaint. Plaintiff appears to be attempting to equate TranzVia's being sued in an earlier lawsuit with having actual knowledge of Rose's alleged wrongdoing in connection with the calls at issue in this case. He argues that the fact that TranzVia "continued to engage Rose" after becoming aware of the Cunningham lawsuit bestowed "apparent authority to violate the TCPA on TranzVia's behalf" on Rose.

> Apparent authority arises from the principal's manifestations to a third party that supplies a reasonable basis for that party to believe that the principal has authorized the alleged agent to do the act in question. [T]he ostensible authority of an agent cannot be based solely upon the agent's conduct. The third party's belief must not only be reasonable, but also "traceable" to the principal's manifestations.

Restatement (Third) of Agency § 2.03. Plaintiff alleges no facts showing that Rose reasonably believed, based on manifestations by TranzVia, that he had the authority to act on behalf of TranzVia in making the calls at issue. To the contrary, the Agreement, which was signed by TranzVia's CEO, clearly provided that no party shall act "as an employee or agent of the other" and that the relationship between Arris and TranzVia

1   "shall be that of independent contractors only."  Generally, an individual acting as an

2   "independent contractor," rather than an agent, does not have the traditional agency

3   relationship with the principal necessary for vicarious liability.  See United States v.

4   Bonds, 608 F.3d 495, 505–06 (9th Cir. 2010); see also Jones, 866 F.3d at 1105.

5        The allegations in Cunningham do not demonstrate that Rose was acting with

6   either actual or apparent authority when he allegedly placed the two calls that plaintiff

7   complains about in the present case.  Moreover, there is nothing in the Cunningham

8   complaint that supports plaintiff's theories in this case – there was no mention of Rose in

9   the original complaint, in the first amended complaint, or in the second amended

10  complaint in Cunningham, and it was not until the third amended complaint that the

11  plaintiff put forth any allegation that TranzVia was liable for the actions of Arris Holdings,

12  LLC.  TranzVia answered and denied the allegations in the third amended complaint, and

13  the plaintiff voluntarily dismissed the case four months later.  Arris never appeared or

14  answered the complaint, and Rose was not named as a defendant.

15       The fact that TranzVia continued to accept leads from Arris after the Cunningham

16  suit was voluntarily dismissed by the plaintiff, and that TranzVia knew Arris generated

17  those leads by making calls, is not enough to enable the court to infer that TranzVia

18  should be held liable for Rose's acts in this case under an agency theory of apparent

19  authority.

20       Finally, the allegations regarding Rose's "access" to TranzVia's C.R.M. system –

21  "which would normally be within its exclusive control" – are conclusory and inapposite.

22  There are no facts pled in the complaint showing that TranzVia's C.R.M. system "would

23  normally be within its exclusive control."  Nor is that allegation supported by anything in

24  the Agreement, which merely sets forth the method by which Arris was to convey

25  information related to the leads it generated to TranzVia – that is, by "upload[ing] it into

26  TranzVia's C.R.M. system."  Agreement ¶ 1.

27       Plaintiff also fails to allege agency based on a theory of ratification.  "Ratification is

28  the affirmance of a prior act done by another, whereby the act is given effect as if done

21

United States District Court
Northern District of California

by an agent acting with actual authority. . . .  A person ratifies an act by (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents."  Restatement (Third) of Agency § 4.01.  The sole requirement for ratification is a manifestation of assent or other conduct indicative of consent by the principal.  Id. cmt. b.

Ratification may only occur when the ratifying entity is capable of acting as the other entity's principal.  See Restatement (Third) of Agency § 4.04 cmt. b ("[c]apacity to ratify requires that the would-be ratifier have capacity to act as a principal in a relationship of agency").  "Although a principal is liable when it ratifies an originally unauthorized tort, the principal-agent relationship is still a requisite, and ratification can have no meaning without it."  Batzel v. Smith, 333 F.3d 1018, 1036 (9th Cir. 2003).  If an agency relationship was not established prior to the unauthorized tort, the continued funding of the other entity is not considered ratification.  Id.; see, e.g., Thomas, 582 Fed. Appx. at 680.

In order to allege that TranzVia "ratified" Rose's allegedly improper calls, plaintiff must allege facts sufficient to allow the court to reasonably infer that TranzVia knew that Rose violated the TCPA and that it "knowingly" accepted the benefits of Rose's violation.  But, TranzVia argues, the terms of the Agreement between Arris and TranzVia only require Arris to provide TranzVia with "'opt-in' lead data and related services."  See Agreement, Preamble.  In doing so, Arris was solely in control of "the messages it transmits in order to obtain potential lead data, as well as the process Arris uses to audit the initial response data before providing leads to TranzVia" and responsible for fully complying with the applicable law.  Agreement ¶ 11.

Here, plaintiff does not allege the existence of a principal-agent relationship between Rose and TranzVia, nor does plaintiff allege facts showing that TranzVia approved of violations of the TCPA perpetrated by Rose, Arris, or any other entity.  Thus, there is no allegation of vicarious liability based on ratification.

Vicarious liability may provide a valid theory for relief under the TCPA and for

22

1  exercising jurisdiction over a defendant that otherwise lacks sufficient contacts with the

2  forum.  In this case, however, plaintiff has failed to adequately plead any of the three

3  forms of agency necessary to support a claim of vicarious liability.  In addition, having

4  failed to adequately plead liability based on agency, plaintiff cannot show that the court

5  has personal jurisdiction over TranzVia on that basis.  See Phan v. Grand Bahama

6  Cruise Line, LLC, 2016 WL 1427648, at *2 (N.D. Cal. Apr. 12, 2016).

7  **CONCLUSION**

8  In accordance with the foregoing, the motion is GRANTED.  The dismissal is with

9  LEAVE TO AMEND.  Any amended complaint shall be filed no later than January 8,

10  2017.  No additional parties or claims may be added without leave of court or stipulation

11  by defendant.

13  **IT IS SO ORDERED.**

14  Dated:  December 4, 2017

_____

PHYLLIS J. HAMILTON
United States District Judge